Theresa M. Key
915 West Manchester Blvd. Ste 5 #1066
Inglewood, CA 90301
(818) 539-7245
Theresakeydoc25@gmail.com
Pro Se Plaintiff



FILED

JUL 14 2025

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| Theresa M. Key,<br>The Estate of Ella Maezonia Simpson<br>Plaintiff/Debtor,<br>vs.<br><br>Selene Finance LP,<br>a financial institution <br><br>U.S. Bank Trust National Association<br>a financial institution<br><br>JP Morgan Chase, a financial institution<br>Defendant(s)/Creditor(s). | Case No.: 2:25-bk-14184-WB<br>Chapter: 13<br><br>Adv. No.: _____<br><br><br>Assigned to: Hon. Julia W. Brand<br><br><br>**ADVERSARY COMPLAINT**<br>FOR DECLARATORY AND INJUNCTIVE<br>RELIEF, TO DETERMINE SECURED<br>STATUS, COMPEL ACCOUNTING, AND<br>OBJECT TO PROOF OF CLAIM<br>(HEARING DATE TO BE SET BY<br>SUMMONS)<br>1. DETERMINATION OF SECURED STATUS<br>(FRBP 7001(2), 11 U.S.C. § 506(a))<br><br>2. OBJECTION TO PROOF OF CLAIM<br>(FRBP 7001(8), 11 U.S.C. § 502(b))<br><br>3. TURNOVER OF ESTATE PROPERTY<br>(FRBP 7001(1), 11 U.S.C. § 542)<br><br>4. EQUITABLE SUBORDINATION<br>(FRBP 7001(7), 11 U.S.C. § 510(c)) |

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4.
EQUITABLE SUBORDINATION

- 1

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,

TO DETERMINE SECURED STATUS, COMPEL ACCOUNTING,

AND OBJECT TO PROOF OF CLAIM

JURISDICTION

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, as the claims arise under Title 11 of the United States Code and are related to Plaintiff's pending Chapter 13 bankruptcy case.

2. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (K), and (O), as it involves the determination of the validity and extent of a lien, objections to claims, and matters affecting the administration of Plaintiff's bankruptcy estate.

3. The relief sought is authorized by 11 U.S.C. §§ 502, 506, 542, and 105(a), which govern objections to claims, determination of secured claims, turnover of estate property, and the Court's general equitable powers in bankruptcy matters.

VENUE

Venue is proper in the United States Bankruptcy Court for the Central District of California – Los Angeles Division, under 28 U.S.C. § 1409(a) as this adversary proceeding arises from Plaintiff's Chapter 13 bankruptcy case. The real property at issue is in Los Angeles County, and Defendants JPMorgan Chase Bank, N.A. and Selene Finance LP have conducted business in this district and filed claims in this case. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2) as the matter concerns claim objections, lien validity, and estate property administration.

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4.
EQUITABLE SUBORDINATION

- 2

PARTIES

1. Plaintiff: Theresa M. Key is the Debtor in this Chapter 13 bankruptcy case and served as the and Successor Trustee and Executor of The Estate of Ella Maezonia Simpson/Revocable Trust. Plaintiff resides in Los Angeles County, California, and has actively attempted to administer the estate and resolve disputes regarding the subject HELOC in good faith.

2. Defendant: JPMorgan Chase Bank, N.A.("Chase"): Chase is a national banking association that serviced the subject HELOC following its acquisition of Washington Mutual in 2008. Chase has engaged in improper loan servicing practices, including misclassification of the debt, rejection of valid payments, and post-confirmation claim modifications inconsistent with bankruptcy law.

3. Defendant: Selene Finance, LP("Selene")/ U.S. Bank Trust National Association: Selene is a loan servicer that assumed servicing rights of the subject HELOC on or around August of 2024. Instead of correcting prior misapplications, Selene continued improper accounting practices, increased the balance to the accelerated amount, and filed motions inconsistent with the confirmed bankruptcy plan, warranting this adversary proceeding.

FACTUAL BACKGROUND

Theresa M. Key ("Debtor and Successor Trustee"), served as the successor trustee and executor of her late mother's estate The Estate of Ella Maezonia Simpson. For over a decade, she has made repeated efforts to ensure proper administration of the estate's financial obligations in accordance with federal bankruptcy law. The present dispute arises from the Defendant's improper servicing, misapplied payments, and failure to comply with the requirements of the Bankruptcy Code. The result is an inflated claim that conflicts with the protections provided under 11 U.S.C. §§ 502, 506, and 1322(b)(5). Plaintiff now seeks a determination of the secured status of the claim, correction of misapplied payments, and other appropriate relief under 11 U.S.C. § 542 to ensure the accurate administration of her Chapter 13 bankruptcy plan.

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4.
EQUITABLE SUBORDINATION

- 3 -

A. Origination of HELOC

Ella Maezonia Simpson, a retired elderly mother established The Ella Maezonia Simpson Revokable Trust to secure her legacy. She consulted with a financial planner, and hired an attorney that funded her trust with 2 houses in June 2007 and named her only daughter Theresa M. Key successor trustee. To prepare for perceived medical challenges, Ella decided to upgrade the bathroom for accessibility. Because her home was fully paid for or unincumbered, she decided to set up a home equity line of credit (HELOC) to cover the cost of the necessary bathroom upgrade.  The Home Equity Line of Credit (HELOC) at issue was originated by Washington Mutual Bank ("WAMU") in September 2007. As part of the loan agreement, WAMU opened a HELOC and savings account in the borrower's name, funded it, and linked it to the HELOC checking account for automatic monthly payments. Although there's no evidence that Ella Simpson approved of an additional loan, or signed an auto pay agreement, payments were debited from the WAMU checking account.  The WAMU checking account was also funded by the same HELOC agreement.

B. Intent and Purpose of The HELOC

The HELOC was originally designated for home improvements, specifically a bathroom upgrade for accessibility, with an estimated $30,000 drawn from the credit line for the bathroom remodel. Unfortunately, Ella succumbed to a chronic terminal illness by August of 2008. Following the death of Ella Maezonia Simpson in August of 2008, Theresa M. Key accepted the role of Successor Trustee. As her only child and heir, Theresa was added to her mother's WAMU account as a beneficiary & successor trustee, WAMU granted account access, and accepted related identification and documentation (EXHIBIT D).

C. Account Acceleration & Misclassification

With WAMU's collapse in 2008, JPMorgan Chase Bank, N.A. ("Chase") assumed servicing of the HELOC in September of 2008. Chase initially accepted payments directly from their established checking account, until the account was closed due to insufficient funds.

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4. EQUITABLE SUBORDINATION

Theresa Key "Plaintiff" continued payments through the online portal. On or around January 2009:

- o  Chase closed the WAMU-funded HELOC checking account, eliminating the mechanism for automated HELOC payments.
- o  Accelerated the entire $100,000 HELOC credit line, despite only $30,000 having been drawn;
- o  Classified the HELOC loan as a mortgage, rejecting valid payments, requested lump sum payments, and failing to recognize the property's trust status maintain the account in the deceased name. By reclassifying the HELOC as a traditional mortgage loan, further complicating claim calculations in violation of 11 U.S.C. § 502(b).
- o  Referred to the account as the Ella M. Simpson account and not the Estate account.

D.  Servicing Misconduct

These actions blocked payment transactions, and created an artificial arrearage, fluctuating amounts and led to ongoing account mismanagement. Representatives requested lump sum payments under the title "payment agreement" during one instance of the automatic stay. This surprising chain of events let Plaintiff review the original HELOC documents. She discovered that her mother was given a credit line, and a home loan that noted a due-on-death clause. This caused the Plaintiff to reach out to Chase representatives in person to attempt to get answers to no avail. With a clearer understanding of the HELOC terms, the Plaintiff sought multiple sources for legal representation including Legal Aid, The Los Angeles County Consumer & Business Affairs office, CFPB, The Attorney General, and the State Bar.

HELOC Servicing Issues and Foreclosure Actions. Between 2008 and 2018, Chase engaged in improper loan servicing practices, including:

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4. EQUITABLE SUBORDINATION

- o Failure to acknowledge Plaintiff's legal trustee status, blocking efforts to resolve accounting discrepancies.
- o Holding payments in suspense accounts, rather than applying them to the loan balance.
- o Repeated need for the only legal recourse: foreclosure filings, despite Plaintiff's ongoing efforts to cure alleged deficiencies.

1. In January 25, 2019 via letter, Chase representatives communicated that representatives had only received the trust documents in August 2018 (Exhibit C), despite Plaintiff having submitted those documents multiple times since 2008. Defendant refused to provide assurance that relevant documents were maintained. Plaintiff provided documentation, including letters, emails, and formal complaints filed with the Consumer Financial Protection Bureau (CFPB) which received an erroneous response (Exhibit B & C), and the Los Angeles Consumer Affairs Department, that confirm Chase's repeated failure to update the account records.

2. Chase's Reclassification of the HELOC and Transfer to Selene Finance

In addition to accelerating the loan, Chase:

- o Increased the HELOC payment from $238 to $1,200, then to $125.50 per month; In August 2024, Chase transferred servicing of the HELOC to Selene Finance LP, which continued the improper accounting practices rather than correcting them. Selene's first statement erroneously reflected a $0 balance (EXHIBIT A), only to later claim $13,000 in arrears.

These inconsistencies constitute a violation of:

- o 11 U.S.C. § 506(a) (governing secured status determination);
- o Fed. R. Bankr. P. 3001(c) (requiring proper claim documentation); and
- o 11 U.S.C. § 502(b)(1) (allowing disallowance of unenforceable claims).

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4. EQUITABLE SUBORDINATION

3. Defendants' Failure to Correct Errors and the Need for Judicial Intervention

Plaintiff has exhausted all reasonable administrative remedies to resolve these discrepancies. Plaintiff has:

- o Filed multiple complaints with the Consumer Financial Protection Bureau (CFPB), documenting unauthorized fees, miscalculated balances, and inaccurate claim amounts.

- o Submitted a formal complaint with the Department of Consumer and Business Affairs (DCBA).

- o Attempted multiple loan modifications, all of which resulted in lost paperwork. Despite these efforts, Defendants have failed to provide full servicing records, correct their accounting errors, or verify their proof of claim documentation. Instead of informing Theresa Key that she was ineligible for loan modification, the representatives sent correspondence noting lost paperwork.

4. Materially inconsistent HELOC Assignment documents and the validity of Defendants' proof of claim relies on an assignment bearing the signatures of known signatories associated with thousands of mass-executed loan assignments during WAMU's collapse. While Plaintiff does not dispute the existence of the underlying debt, she disputes the validity of Defendants' secured claim, and requests verification of full supporting documentation in compliance with 11 U.S.C. § 502(b) and Fed. R. Bankr. P. 3001(c).

5. Upon receipt of the new account Selene finance added a new assignment with a different signatory. This raises concerns about the validity of the assignment.

The Plaintiff / Debtor is aware that the original purpose of a successor trustee is to complete their fiduciary duty by paying off any estate related debt. In an effort to complete this duty, Plaintiff / Debtor hired a trust attorney to administer the trust, place both properties in her as instructed by the trust. Unfortunately, the WAMU due-on-death

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4. EQUITABLE SUBORDINATION

clause, unqualified and unauthorized fixed rate loan has kept what would have been a simple transaction, held for over a decade. Given the well documented tumultuous nature of communications with Chase, as well as the inability to communicate directly with the lender in person or through account access as an account holder or fiduciary. The only legal recourse has been the bankruptcy court.

6. Over the past decade, Plaintiff/Debtor has experienced repeated account acceleration, inconsistent payment demands, and material discrepancies in loan servicing documents. These irregularities, coupled with ongoing foreclosure threats, have caused prolonged financial and emotional distress to Plaintiff and her family. Despite Plaintiff's efforts to communicate and resolve the matter, Chase's servicing practices created confusion regarding the balance owed and the proper classification of the debt. Upon transferring to Selene Finance, these problems persisted. Selene representatives denied account access, questioned the trust's validity without clear legal basis, and issued statements showing inconsistent or inflated payment amounts. In some instances, Plaintiff was told that representatives could not communicate with her, despite her legal role as successor trustee and fiduciary. These actions have impaired Plaintiff's ability to administer the estate and protect estate property as required by 11 U.S.C. §§ 1306 and 541. Given the potentially time limited or expired nature of the debt and the lack of transparency from both servicers, Plaintiff respectfully submits that judicial review is the only adequate remedy to determine the accurate secured status of the claim and preserve her Chapter 13 reorganization. Unverified debt inflates the claim and limits the Plaintiff/Debtor's ability to reasonably cure valid claims within the time allotted.

7. In an effort to fulfill her fiduciary duty, Plaintiff/Debtor reviewed the original HELOC contract. She located a clause that accelerates the debt upon the death of the borrower. Based on the trust documents and her mother's stated intent to protect the home through estate planning, she believes this clause undermines her wishes and was not properly

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4. EQUITABLE SUBORDINATION

- 8

disclosed. As a direct result of Defendants' unexplained enforcement of a due-on-death clause—without proper notice or documentation—Plaintiff was prevented from obtaining accurate information about the debt and subsequent claim. This confusion contributed to the excessive legal fees, denial of her motion to extend the automatic stay in a prior Chapter 13 case, which was dismissed before confirmation. Defendants' conduct deprived Plaintiff of a meaningful opportunity to cure the arrears, plan repayment, or seek alternative resolution.

CLAIMS

**COUNT I – Determination of Secured Status**

**11 U.S.C. § 506(a)**

Plaintiff/Debtor seeks a determination that Defendants do not hold a valid secured interest in the estate property. Defendants have failed to establish the enforceability or proper perfection of the alleged lien. Due to defects in origination, the lien's attachment to a trust-owned property, and unclear assignments, Plaintiff requests that the Court determine the value, if any, of the secured portion of Defendants' claim under § 506(a).

**COUNT II – Objection to Proof of Claim**

**11 U.S.C. § 502(b)(1) & Fed. R. Bankr. P. 3001(c)**

Defendant(s)/Creditor(s) proof of claim contains materially inaccurate charges and fails to provide the documentation required to support a secured claim. The loan ledger and accounting statements conflict with the claim total. Plaintiff objects to the claim and seeks disallowance of any portion that is unauthorized, miscalculated, enriched or unsubstantiated. The original loan documents lack proper signatures, initials and approvals which suggest that the original intent of the HELOC wasn't honored, the HELOC product wasn't associated with the trust and it's possible that Ella Simpson wasn't made aware of the terms. The extent of the debt exceeded the intent by thousands of dollars.

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4.
EQUITABLE SUBORDINATION

- 9

**COUNT III – Turnover of Property of the Estate**

**11 U.S.C. § 542(a)**

Defendant(s)/Creditor(s) have failed to turn over full financial and servicing records—including complete payment histories, accounting ledgers, and escrow data—necessary for estate administration and claim evaluation. These materials are essential to determine the estate's rights and interest in the subject property. Plaintiff seeks an order compelling turnover under § 542(a).

yes

**COUNT IV – Determination of Lien Validity**

**11 U.S.C. § 506(d)**

Plaintiff / Debtor asserts that the lien is void to the extent it secures a claim that is not allowable under § 502(b) or was recorded based on a debt incurred by a borrower who had no legal authority to encumber the property. The alleged loan was issued in the name of Plaintiff's deceased mother, not as trustee, and the lien purports to attach to trust property without valid authority. Additionally, Defendants have failed to validate the debt or lien through proper assignment or proof of claim. Pursuant to § 506(d), Plaintiff requests that the lien be deemed void to the extent it secures a disallowed claim.

**COUNT V – Equitable Subordination**

**11 U.S.C. § 510(c)**

Through a pattern of inequitable conduct—including continuing to foreclose under active bankruptcy stay, deleting documents and QWR requests, refusing to offer a real loan modification, accepting payments while denying account access, issuing misleading modification communications, and recording defective instruments—Defendants have gained an unfair advantage over the Defendant/Debtor and other creditors. Plaintiff seeks equitable subordination of Defendants' claim under § 510(c), such that any allowed portion of their claim is subordinated to the claims of other legitimate creditors.

**COUNT VI – Declaratory Relief Regarding Estate Interest and Standing**

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4.
EQUITABLE SUBORDINATION

- 10

COUNT VI – Declaratory Relief Regarding Estate Interest and Standing

**11 U.S.C. § 105(a) & 28 U.S.C. § 2201 (as applied through bankruptcy)**

Plaintiff/Debtor seeks a declaration that she has standing to assert claims concerning the estate property, including her status as successor trustee or beneficiary. Defendants' refusal to acknowledge Plaintiff's legal interest in the property has created uncertainty that obstructed estate administration. The lien should be deemed void to the extent that it secures ad debt that was improperly accelerated or time barred. A judicial declaration is necessary to resolve issues regarding the estate's rights in the subject property and Plaintiff's authority to act in its interest.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

1. Determine the secured or unsecured status of the Defendants' claim under 11 U.S.C. § 506(a).

2. Sustain the objection to the proof of claim and require an accurate accounting of all amounts owed under 11 U.S.C. § 502(b).

3. Compel Defendants to turn over all relevant records and servicing history related to the HELOC under 11 U.S.C. § 542.

4. Issue a declaratory judgment that Defendants violated the automatic stay by continuing foreclosure activity and impose appropriate sanctions under 11 U.S.C. § 362(a).

5. Grant equitable subordination of Defendants' claim under 11 U.S.C. § 510(c) due to their bad faith servicing practices,

6. Disallow any improperly assessed charges, penalties, or fees that resulted from Selene Finance's improper claim calculations and Chase's previous misapplication of payments.

7. Correct the proof of claim amount to reflect only the actual outstanding balance.

8. Any relief the Court deems just and proper.

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4. EQUITABLE SUBORDINATION

- 11

Plaintiff / Debtor respectfully requests that this Court grant the relief requested above, and any further relief the Court deems just and proper under the circumstances. Plaintiff/Debtor has acted in good faith to resolve these issues over the last 15 years to the detriment of her family. This adversary proceeding is necessary to ensure compliance with the Bankruptcy Code, protect the integrity of the existing Chapter 13 plan, and secure accurate resolution of the underlying debt. Plaintiff seeks only fairness, proper accounting, and respect for the bankruptcy process, so that she may fulfill her obligations while carrying out her fiduciary duty to the estate, and the wishes of her beloved mother.

Dated: July 14, 2025

Respectfully submitted,

/s/ Theresa M. Key
Pro Se Plaintiff

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4.
EQUITABLE SUBORDINATION

## EXHIBIT INDEX

**Exhibit**     **Description**

**A**     Selene Finance LP Statement/Correspondence

**B**     WAMU JP Morgan Chase HELOC Loan Docs/ Ledger from 2007-2018

C     Chase Correspondence.

D     WAMU/Chase Email Account Access examples

E     MISC Email Communication to previous attorney

ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
1. DETERMINATION OF SECURED STATUS 2. OBJECTION TO PROOF OF CLAIM 3. TURNOVER OF ESTATE PROPERTY 4.
EQUITABLE SUBORDINATION

# EXHIBIT A

 **selene**

Home Equity Line of Credit Statement

**Statement Closing Date: January 04, 2025**

For Return Service Only
P.O. Box 8619
Philadelphia, PA  19101-8619

| Loan Number: | ●●●●9855 |
| Next Payment Date: | 01/18/2025 |
| **Payment Amount Due:** | **$0.00** |

85849498
ELLA MAEZONIA SIMPSON



 **Online Information:** www.selenefinance.com
**Email:** customerservice@selenefinance.com

**Hours of Operation:**
 Monday through Thursday 8:00 am to 9:00 pm, CT; Friday 8:00 am to 5:00 pm, CT
**Phone:** (877) 735-3637
**Hearing Impaired:** Call 711 or (800) 735-2989
Fax: (866) 926-5496

| **Payments:** | **Correspondence:** |
| PO Box 660369 | P.O. Box 8619 |
| Dallas, TX 75266-0369 | Philadelphia, PA 19101-8619 |

ess:

## CURRENT ACCOUNT INFORMATION

### Bankruptcy Messages

Our records show that you are a debtor in bankruptcy. This statement is being sent to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us at: Selene Finance LP, Attn: Customer Service Research, P.O. Box 8279, Philadelphia, PA 19101-8279. Or you may fax us at (866) 926-5496, or email us at: CustomerService@selenefinance.com.

### Account Information Summary

| | |
|---|---|
| Previous Bill Balance | $104,862.90 |
| Interest Charges | $0.00 |
| Debit/Credit Adjustments | $0.00 |
| Payments and Other Credits | $0.00 |
| **New Balance as of 01/04/25** | **$104,862.90** |
| Bill Average Daily Balance | $96,062.43 |
| Effective APR | 0.00000% |
| Credit Limit | $100,000.00 |
| Available Credit | $0.00 |
| Days in Billing Cycle | 30 |
| Interest Billed Through | 01/04/2025 |

### Explanation of Payment Amount (Post-Petition Payment)

| | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Interest Adjustment | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 |
| **Post Petition Payment** | **$0.00** |
| Past Unpaid Amount | $0.00 |
| Total Fees and Other Charges | $0.00 |
| **Total Payment Amount** | **$0.00** |
| Partial Payment/Unapplied Balance* | $347.15 |

*The Payment Amount does not include any amount that was past due before you filed for bankruptcy.*

### Important Messages

Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage. Those funds are shown in the Unapplied Balance line. If you pay the Total Payment Amount, the unapplied funds will then be applied to your mortgage.

**We have not received all of your mortgage payments due since you filed for bankruptcy.**

This statement may not show payments you recently sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or the Trustee if you have questions.

The Transaction Activity and Breakdown of Past Payments information boxes reflect information that is based on the contractual activity of your account and may not necessarily reflect the post-petition or the pre-petition bankruptcy ledger activity.

### Past Payments Breakdown

| | Paid This Period | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes & Insurance) | $0.00 | $0.00 |
| Late Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied*) | $346.93 | $346.93 |
| **Total** | **$346.93** | **$0.00** |

### Summary Of Amounts Past Due Before Bankruptcy Filing (Pre-Petition Arrearage)

| | |
|---|---|
| Paid Since Last Statement | $346.93 |
| Total Paid During Bankruptcy | $346.93 |
| Current Balance | $44,258.40 |

This box shows amounts that were past due when bankruptcy was filed. It may also include other allowed amounts on the mortgage loan. The amount may vary dependent upon court approval. The Trustee is sending us the payments shown here. These are separate from the regular monthly mortgage payment.

*Please detach bottom portion and return with payment*

 **selene**

**Home Equity Line of Credit Statement**

**Statement Closing Date: February 05, 2025**

For Return Service Only
P.O. Box 8619
Philadelphia, PA 19101-8619

| Loan Number: | 9855 |
| Next Payment Date: | 02/18/2025 |
| **Payment Amount Due:** | **$125.50** |

92790140
ELLA MAEZONIA SIMPSON





 **Online Information:** www.selenefinance.com
**Email:** customerservice@selenefinance.com

 **Hours of Operation:**
Monday through Thursday 8:00 am to 9:00 pm, CT; Friday 8:00 am to 5:00 pm, CT
**Phone:** (877) 735-3637
**Hearing Impaired:** Call 711 or (800) 735-2989
**Fax:** (866) 926-5496

| **Payments:** | **Correspondence:** |
| P.O. Box 660369 | P.O. Box 8619 |
| Dallas, TX 75266-0369 | Philadelphia, PA 19101-8619 |

## CURRENT ACCOUNT INFORMATION

### Bankruptcy Messages

Our records show that you are a debtor in bankruptcy. This statement is being sent to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.

If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions.

If you want to stop receiving statements, write to us at: Selene Finance LP, Attn: Customer Service Research, P.O. Box 8279, Philadelphia, PA 19101-8279. Or you may fax us at (866) 926-5496, or email us at: CustomerService@selenefinance.com.

### Account Information Summary

| | |
|---|---|
| Previous Bill Balance | $104,862.90 |
| Interest Charges | $0.00 |
| Debit/Credit Adjustments | $0.00 |
| Payments and Other Credits | $0.00 |
| **New Balance as of 02/05/25** | **$104,862.90** |
| Bill Average Daily Balance | $96,062.43 |
| Effective APR | 0.00000% |
| Credit Limit | $100,000.00 |
| Available Credit | $0.00 |
| Days in Billing Cycle | 32 |
| Interest Billed Through | 02/05/2025 |

### Explanation of Payment Amount (Post-Petition Payment)

| | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Interest Adjustment | $0.00 |
| Escrow (for Taxes & Insurance) | $125.50 |
| **Post Petition Payment** | **$125.50** |
| Past Unpaid Amount | $0.00 |
| Total Fees and Other Charges | $0.00 |
| **Total Payment Amount** | **$125.50** |
| Partial Payment/Unapplied Balance* | $0.00 |

*The Payment Amount does not include any amount that was past due before you filed for bankruptcy.*

### Important Messages

We have not received all of your mortgage payments due since you filed for bankruptcy.

This statement may not show payments you recently sent to the Trustee that the Trustee has not yet forwarded to us. Please contact your attorney or the Trustee if you have questions.

The Transaction Activity and Breakdown of Past Payments information boxes reflect information that is based on the contractual activity of your account and may not necessarily reflect the post-petition or the pre-petition bankruptcy ledger activity.

### Past Payments Breakdown

| | Paid This Period | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes & Insurance) | $0.00 | $0.00 |
| Late Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied*) | $0.00 | $346.93 |
| **Total** | **$0.00** | **$0.00** |

### Summary Of Amounts Past Due Before Bankruptcy Filing (Pre-Petition Arrearage)

| | |
|---|---|
| Paid Since Last Statement | $0.00 |
| Total Paid During Bankruptcy | $346.93 |
| Current Balance | $44,258.40 |

This box shows amounts that were past due when bankruptcy was filed. It may also include other allowed amounts on the mortgage loan. The amount may vary dependent upon court approval. The Trustee is sending us the payments shown here. These are separate from the regular monthly mortgage payment.

------------------------------------------------------------
*Please detach bottom portion and return with your payment.*

 **selene**



## Home Equity Line of Credit Statement

**Statement Closing Date: April 05, 2025**

For Return Service Only
P.O. Box 8619
Philadelphia, PA  19101-8619

| Loan Number: | 9855 |
|---|---|
| Next Payment Date: | 04/18/2025 |
| **Payment Amount Due:** | **$13,972.32** |

103217018
ELLA MAEZONIA SIMPSON





 **Online Information:** www.selenefinance.com
**Email:** customerservice@selenefinance.com

**Hours of Operation:**
 Monday through Thursday 8:00 am to 9:00 pm, CT; Friday 8:00 am to 5:00 pm, CT
**Phone:** (877) 735-3637
**Hearing Impaired:** Call 711 or (800) 735-2989
Fax: (866) 926-5496

 **Payments:**
P.O. Box 660369
Dallas, TX 75266-0369

**Correspondence:**
P.O. Box 8619
Philadelphia, PA 19101-8619

## CURRENT ACCOUNT INFORMATION

### Bankruptcy Messages

Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.
We are sending this statement for informational and compliance purposes only. It is not an attempt to collect a debt against you.
If you want to stop receiving statements, write to us at: Selene Finance LP, Attn: Customer Service Research, P.O. Box 8279, Philadelphia, PA 19101-8279. Or you may fax us at (866) 926-5496, or email us at: CustomerService@selenefinance.com.

### Account Information Summary

| | |
|---|---|
| Previous Bill Balance | $104,862.90 |
| Advances and Fees | $0.00 |
| Interest Charges | $0.00 |
| Debit/Credit Adjustments | $0.00 |
| Payments and Other Credits | $0.00 |
| **New Balance as of 04/05/25** | **$104,862.90** |
| Escrow Balance | -$6,911.17 |
| Late Charge Balance | $0.00 |
| NSF/Other Fee Balance | $0.00 |
| Corporate Advance Balance | $24,769.71 |
| Bill Average Daily Balance | $96,062.43 |
| Effective APR | 0.00000% |
| Credit Limit | $100,000.00 |
| Available Credit | $0.00 |
| Days in Billing Cycle | 31 |
| Interest Billed Through | 04/05/2025 |

### Explanation of Payment Amount

| | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Interest Adjustment | $0.00 |
| Escrow (for Taxes & Insurance) | $402.85 |
| **Minimum Payment** | **$402.85** |
| Past Unpaid Amount | $13,569.47 |
| Total Fees and Other Charges | $0.00 |
| **Total Payment Amount** | **$13,972.32** |
| Partial Payment/Unapplied Balance* | $427.51 |

### *** Account History ***

Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage. Those funds are shown in the Unapplied Balance line. If you pay the Total Payment Amount, the unapplied funds will then be applied to your mortgage.

**Recent History**

* Payment Date 07/18/24 Unpaid Amount of $125.50.
* Payment Date 08/18/24 Unpaid Amount of $125.50.
* Payment Date 09/18/24 Unpaid Amount of $125.50.
* Payment Date 10/18/24 Unpaid Amount of $125.50.
* Payment Date 02/18/25 Unpaid Amount of $125.50.
* Payment Date 03/18/25 Unpaid Amount of $125.50.
Current Payment Date 04/18/25: $402.85.
**Total: $13,972.32 unpaid amount that, if paid, would bring your loan current.**

**If you are experiencing financial difficulty:** See back for information about mortgage counseling assistance.

### Past Payments Breakdown

| | Paid This Period | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes & Insurance) | $0.00 | $266.57 |
| Late Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied*) | $0.00 | $80.36 |
| **Total** | **$0.00** | **$266.57** |

**ACTIVITY AND FINANCE CHARGES**                    **Current Principal Balance $96,062.43**

### Transaction Activity (03/06/25 - 04/05/25)

| Process Date | Effective Date | Description | Total Amount | Principal Applied | Interest | Escrow | Charges/ Fees | Unapplied/ Other |
|---|---|---|---|---|---|---|---|---|
| 03/08/25 | 03/08/25 | ESCROW ADVANCE | $192.29 | $0.00 | $0.00 | $192.29 | $0.00 | $0.00 |
| 03/08/25 | 03/08/25 | HOMEOWNERS INSURANCE | -$192.29 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

---

*Please detach bottom portion and return with your payment.*

 selene

Home Equity Line of Credit Statement
Statement Closing Date: May 05, 2025

For Return Service Only
P.O. Box 8619
Philadelphia, PA  19101-8619

| Loan Number: | 9855 |
| Next Payment Date: | 05/18/2025 |
| **Payment Amount Due:** | **$16,297.91** |


109573156
ELLA MAEZONIA SIMPSON

 **Online Information:** www.selenefinance.com
**Email:** customerservice@selenefinance.com

**Hours of Operation:**
Monday through Thursday 8:00 am to 9:00 pm, CT; Friday 8:00 am to 5:00 pm, CT
**Phone:** (877) 735-3637
**Hearing Impaired:** Call 711 or (800) 735-2989
Fax: (866) 926-5496

 **Payments:**
P.O. Box 660369
Dallas, TX 75266-0369

**Correspondence:**
P.O. Box 8619
Philadelphia, PA 19101-8619

 dress:

## CURRENT ACCOUNT INFORMATION

### Bankruptcy Messages

Our records show that either you are a debtor in bankruptcy or you discharged personal liability for your mortgage loan in bankruptcy.
We are sending this statement for informational and compliance purposes only. It is not an attempt to collect a debt against you.
If you want to stop receiving statements, write to us at: Selene Finance LP, Attn: Customer Service Research, P.O. Box 8279, Philadelphia, PA 19101-8279. Or you may fax us at (866) 926-5496, or email us at: CustomerService@selenefinance.com.

### Account Information Summary

| | |
|---|---|
| Previous Bill Balance | $104,862.90 |
| Advances and Fees | $0.00 |
| Interest Charges | $1,517.86 |
| Debit/Credit Adjustments | $0.00 |
| Payments and Other Credits | $0.00 |
| **New Balance as of 05/05/25** | **$106,380.76** |
| Escrow Balance | -$7,103.46 |
| Late Charge Balance | $0.00 |
| NSF/Other Fee Balance | $0.00 |
| Corporate Advance Balance | $25,148.48 |
| Bill Average Daily Balance | $96,062.43 |
| Effective APR | 7.49000% |
| Credit Limit | $100,000.00 |
| Available Credit | $0.00 |
| Days in Billing Cycle | 77 |
| Interest Billed Through | 05/05/2025 |

### Explanation of Payment Amount

| | |
|---|---|
| Principal | $0.00 |
| Interest | $996.26 |
| Interest Adjustment | $926.48 |
| Escrow (for Taxes & Insurance) | $402.85 |
| **Minimum Payment** | **$1,399.11** |
| Past Unpaid Amount | $13,972.32 |
| Total Fees and Other Charges | $0.00 |
| **Total Payment Amount** | **$16,297.91** |
| Partial Payment/Unapplied Balance* | $427.51 |

### *** Account History ***

Any partial payments that you make are not applied to your mortgage but instead are held in an unapplied account on your mortgage. Those funds are shown in the Unapplied Balance line. If you pay the Total Payment Amount, the unapplied funds will then be applied to your mortgage.

**Recent History**
* Payment Date 08/18/24 Unpaid Amount of $125.50.
* Payment Date 09/18/24 Unpaid Amount of $125.50.
* Payment Date 10/18/24 Unpaid Amount of $125.50.
* Payment Date 02/18/25 Unpaid Amount of $125.50.
* Payment Date 03/18/25 Unpaid Amount of $125.50.
* Payment Date 04/18/25 Unpaid Amount of $402.85.
Current Payment Date 05/18/25: $1,399.11.
**Total: $16,297.91 unpaid amount that, if paid, would bring your loan current.**

**If you are experiencing financial difficulty:** See back for information about mortgage counseling assistance.

### Past Payments Breakdown

| | Paid This Period | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes & Insurance) | $0.00 | $266.57 |
| Late Fees and Other Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied*) | $0.00 | $80.36 |
| **Total** | **$0.00** | **$266.57** |

## ACTIVITY AND FINANCE CHARGES                              Current Principal Balance $96,062.43

### Transaction Activity (02/18/25 - 05/05/25)

| Process Date | Effective Date | Description | Total Amount | Principal Applied | Interest | Escrow | Charges/ Fees | Unapplied/ Other |
|---|---|---|---|---|---|---|---|---|
| 04/08/25 | 04/08/25 | ESCROW ADVANCE | $192.29 | $0.00 | $0.00 | $192.29 | $0.00 | $0.00 |
| 04/08/25 | 04/08/25 | HOMEOWNERS INSURANCE | -$192.29 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/25/25 | 04/25/25 | POSTAGE CHRGS | $0.97 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

----------------------------------------------------------------
*Please detach bottom portion and return with your payment.*
----------------------------------------------------------------

Home Equity Line of Credit

Ella Maezonia Simpson
PAYOFF STATEMENT

SELENE FINANCE LP
P.O. Box 8619
Philadelphia, PA 19101-8619
Telephone (877) 735-3637
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

05-02-25
Ella Maezonia Simpson
 A 90001

RE: Ella Maezonia Simpson

Property Address:
    1430 E 60th St
    Los Angeles CA 90001

Loan No:      9855
Loan Type: CONV W/O PMI
Investor:      5H3-0004629986

```
*********************************************************************
*  ONLY CERTIFIED FUNDS WILL BE ACCEPTED FOR THE PAYOFF SHOWN BELOW  *
*********************************************************************
```

These figures are due through May 10, 2025 and the loan is
due for the May 18, 2019 payment.

Interest Rate 5.24000%

| | | |
|---|---|---|
| The Current Principal Balance is: | $ | 96,062.43 |
| Deferred Balance: | $ | .00 |
| Interest Through 05-10-25 | | |
| Total Interest Due | $ | 8,800.47 |
| Escrow/Impound Overdraft | $ | 7,103.46 |
| RREM Int | $ | .00 |
| RREM Fees | $ | .00 |
| Suspense Balance | $ | -427.51 |
| Recoverable Balance | $ | 25,118.48 |
| Attorney Fees & Cost | $ | 570.00 |
| TOTAL AMOUNT DUE TO PAY LOAN IN FULL BY 05-10-25 | $ | 137,227.33 |

Funds received after May 10, 2025 will require an additional
$ 19.71 interest per Day. This Payoff is only good until the end
of the month.
If funds are not received by the end of the month an additional
month MIP should be added to the Payoff figure.



P.O. Box 8619
Philadelphia, PA 19101-8619
Telephone (877) 768-3759
Fax (866) 926-5496

Hours of Operation (CT)
Monday – Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. – 5 p.m.

May 14, 2025

Reinstatement Quote

ELLA MAEZONIA SIMPSON

Loan Number:        9855
Property Address: 1430 E 60th ST
LOA ANGELES  CA  90001

Date Issued:           05/14/25
Quote Good Through:    05/19/25
Contractually Due:     05/18/19

The following are the instructions for curing your default on your existing mortgage account:

| Description | Amount |
| --- | --- |
| Past Due Payments: | $15,371.43 |
| Total Late Charges: | $0 |
| Return Check Fee: | $0 |
| Escrow Advance Balance: | $1,721.05 |
| Corporate Advance Balance: | $25,148.48 |
| Suspense/Credit Balance: | -$427.51 |
| Attorney Fees and Costs: | $855.00 |

| Total Amount Due: | $42,668.45 |
| --- | --- |

Remittance Instructions and Disclosures:

1.  Reinstatement Funds must be certified funds made payable to Selene Finance: Cashier's Check, Bank Certified Check, Title Company Check or Attorney's Escrow Check or Money Gram. No **personal checks will be accepted.**

2.  Payment remittance information:
    Include loan number, property address and name of customer:

    <u>Overnight Mail</u>                <u>Money Gram</u>
    Selene Finance, LP              800-555-3133
    Attn: Cash Services            Code:  6440
    3501 Olympus Blvd, Ste. 500    Reference Loan Number
    Dallas, TX 75019

CS402
NMLS #6312

 **selene**

P.O. Box 8619
Philadelphia, PA 19101-8619
Telephone (877) 735-3637
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

06/04/2025

Theresa Key
████████████████
████████████████

Re:  ID Number:         281
     Claimant:          Theresa Key
     Property Address: ████████████
                       ████████████████

To Whom It May Concern:

You have indicated that you acquired an ownership interest in the borrower's property as a result of the borrower's death, but it is not clear exactly how the ownership interest was transferred to you. In order to provide you with a more individualized description of the documentation that is needed to confirm you as a successor in interest, we will need to know how the property was transferred to you. For example:

> **Did you own the property with the borrower as a joint tenant with a right of survivorship?**
> **If you were a relative of the borrower:**
>    • Were you transferred the property through a deed?
>    • Did you hold the property as community property with the borrower?
>    • Did a court (or other duly appointed official) issue an order, decree, or other document related to the disposition of the borrower's property?
>    • Did the borrower have a will that transferred all or a portion of his/her interest in the real property to you?
>    • Did you acquire an interest in the borrower's real property through California's intestacy laws, or through a non-probate transfer?

Once we determine how you acquired an ownership interest in the borrower's property, we will provide you with a more individualized list of acceptable documentation that you can submit to establish yourself as a successor in interest.

Examples of documents that would typically be accepted in this jurisdiction in the death context include:

> **To prove the borrower's death:**
>    • Death certificate

> **To prove that you were transferred an ownership interest in the borrower's property:**
>    • Deed titled to you and the borrower as joint tenants with a right of survivorship
>    • Deed transferring the real property to you
>    • Transfer-on-death deed (beneficiary deed)
>    • Deed titled to you and the borrower as community property
>    • Spousal agreement to non-probate transfer of community property at death
>    • Court order, decree, or other document executed or certified by a court
>    • Recorded and certified copy of an affidavit transferring real property of small value
>    • Copy of a will and some record that it was admitted to probate
>    • Affidavit proving that you are the borrower's lawful heir under the California laws of intestate succession



**❖ selene**

P.O. Box 8619
Philadelphia, PA 19101-8619
Telephone (877) 735-3637
Fax (866) 926-5498
www.selenefinance.com

Hours of Operation (CT)
Monday - Thursday: 8 a.m. - 9 p.m.
Friday: 8 a.m. - 5 p.m.

06/05/2025

ELLA MAEZONIA SIMPSON



Re:    Claimant ID:      121281
       Claimant:         Theresa Key
       Property:

Dear ELLA MAEZONIA SIMPSON:

Selene Finance LP ("Selene") has received the following documentation in connection with your claim as a potential successor in interest:

- Trust Document (Unrecorded)
- Recorded Quit Claim Deed
- Certificate of Death

In order to complete its review of your claim, the following information is still needed:

- Photo Identification

Upon receipt of all required documentation, Selene will make a decision regarding your request and will notify you of the decision. If you require additional assistance please contact our Successor in Interest Department toll-free at (877) 735-3637.

Sincerely,

Successor in Interest Department
Selene Finance LP



SI401                                    NMLS #6312                                    2 of 3

# EXHIBIT B

09/11/07

200720909 03

Recording requested by and

**When Recorded Mail to:**
Optima Information Solutions
3 First American Way
Santa Ana, CA 92707
WAMU                                    NS

**Washington Mutual**

**WaMu Equity Plus**
**DEED OF TRUST**
Loan Number: ████4091

THIS DEED OF TRUST is between:
ELLA MAEZONIA SIMPSON

whose address is: ████████████████

("Trustor"):    CALIFORNIA RECONVEYANCE COMPANY    a    CALIFORNIA corporation, the address of which is: ████████████████

and its successors in trust and assigns ("Trustee"); and
WASHINGTON MUTUAL BANK, A FEDERAL ASSOCIATION, WHICH IS ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA AND WHOSE ADDRESS IS 2273 N GREENVALLEY PARKWAY, SUITE #14, HENDERSON, NV 89014 ("BENEFICIARY") AND ITS SUCCESSORS OR ASSIGNS.

   1.   **Granting Clause.** Trustor hereby grants, bargains, sells and conveys to Trustee in trust, with power of sale, the real property in _____LOS ANGELES_____ County, California, described below and all interest in it Trustor ever gets:
THE FOLLOWING DESCRIBED PROPERTY LOCATED IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:
LOT 23 OF TRACT NO. 5097 AS PER MAP RECORDED IN BOOK 58 PAGE 13 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Tax Parcel Number: _____████████009_____ together with all insurance and condemnation proceeds related to it; all plumbing, lighting, air conditioning and heating apparatus and equipment; and all fencing, blinds, drapes, floor coverings, built-in

4 3 6 0 (01/24/07) w8.2                                                          Page 1 of 7

Description: Los Angeles,CA Document-Year.DocID 2007.2090903 Page: 2 of 8
Order: 28982 Comment:

4091

appliances and other fixtures at any time installed on or in or used in connection with such real property.

All of the property described above will be called the "Property". As used herein "State" shall refer to the state of California.

2. **Obligation Secured** This Deed of Trust is given to secure performance of each promise of Trustor contained herein and in a _____WaMu Equity Plus(TM)_____ Agreement and Disclosure with Beneficiary of even date herewith with a maximum credit limit of _____$100,000.00_____ (the "Credit Agreement"), including any extensions, renewals or modifications thereof, and repayment of all sums borrowed by Trustor under the Credit Agreement, with interest from the date of each advance until paid at the rates provided therein. The Credit Agreement provides for variable and fixed rates of interest. Under the Credit Agreement, the Trustor may borrow, repay and re-borrow from time to time, up to the maximum credit limit stated above, and all such advances shall be secured by the lien of this Deed of Trust. This Deed of Trust also secures payment of certain fees and charges payable by Trustor under the Credit Agreement, certain fees and costs of Beneficiary as provided in Section 9 of this Deed of Trust, and repayment of money advanced by Beneficiary to protect the Property or Beneficiary's interest in the Property, including advances made pursuant to Section 6 below. The Credit Agreement provides that unless sooner repaid, all amounts due under the Credit Agreement are due and payable in full thirty (30) years from the date of this Deed of Trust (the "Maturity Date"). All amounts due under the Credit Agreement and this Deed of Trust are called the "Debt".

3. **Representations of Trustor** Trustor represents that:
(a) Trustor is the owner of the Property, which is unencumbered except by: easements, reservations, and restrictions of record not inconsistent with the intended use of the Property and any existing first mortgage or deed of trust given in good faith and for value, the existence of which has been disclosed in writing to Beneficiary; and
(b) The Property is not presently and will not during the term of this Deed of Trust be used for any agricultural purposes.

4. **Promises of Trustor** Trustor promises:
(a) To keep the Property in good repair and not to remove, alter or demolish any of the improvements on the Property, without first obtaining Beneficiary's written consent;
(b) To allow representatives of Beneficiary to inspect the Property at any reasonable hour, and to comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting the Property;
(c) To pay on time all lawful taxes and assessments on the Property;
(d) To perform on time all terms, covenants and conditions of any prior mortgage or deed of trust covering the Property or any part of it and pay all amounts due and owing thereunder in a timely manner;
(e) To see to it that this Deed of Trust remains a valid lien on the Property superior to all liens except those described in Section 3(a), and to keep the Property free of all encumbrances which may impair Beneficiary's security;
(f) To keep the improvements on the Property insured by a company satisfactory to Beneficiary against fire and extended coverage perils, and against such other risks as Beneficiary may reasonably require, in an amount equal to the full insurable value of the improvements, and to deliver evidence of such insurance coverage to Beneficiary. Subject to the rights of the holder of any lien described in 3(a), Beneficiary shall be named as the loss payee on all such policies pursuant to a standard lender's loss payable clause. The amount collected under any insurance policy shall

4 3 6 0 (01/24/07) w8.2                                                    Page 2 of 7

*Description: Los Angeles, CA Document-Year.DocID 2007.2090903 Page: 3 of 8*
*Order: 28982 Comment:*



be applied to the repair of such improvements, unless doing so would impair Beneficiary's security, in which event such proceeds may be applied upon any indebtedness hereby secured. In the event of foreclosure or sale of the Property pursuant to the Trustee's power of sale, all rights of the Trustor in insurance policies then in force shall pass to the purchaser at the Sheriff's or Trustee's sale.

(g) To sign all financing statements and other documents that Beneficiary may request from time to time to perfect, protect and continue Beneficiary's security interest in the Property. Trustor irrevocably appoints Beneficiary as Grantor's attorney-in-fact to execute, file and record any financing statements or similar documents in Trustor's name and to execute all documents necessary to transfer title if there is a default; and

(h) To advise Beneficiary immediately in writing of any change in Trustor's name, address or employment.

5. **Sale, Transfer or Further Encumbrance of Property.** Subject to applicable law, the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by Trustor by contract of sale or otherwise including, without limit, any further encumbrance of the Property.

6. **Curing of Defaults.** If Trustor fails to comply with any of the covenants in Section 4, including all the terms of any prior mortgage or deed of trust, Beneficiary may take any action required to comply with any such covenants without waiving any other right or remedy it may have for Trustor's failure to comply. Repayment to Beneficiary of all the money spent by Beneficiary on behalf of Trustor shall be secured by this Deed of Trust; at Beneficiaries option, advance may be made against the Credit Agreement to pay amounts due hereunder; such shall not relieve Beneficiary from liability for failure to fulfill the covenants in Section 4. The amount spent shall bear interest at the rates from time to time applicable under the Credit Agreement and be repayable by Trustor on demand. Although Beneficiary may take action under this paragraph, Beneficiary is not obligated to do so.

7. **Remedies For Default.**
(a) Prompt performance under this Deed of Trust is essential. If Trustor does not pay any installment of the Debt or other amount due hereunder on time, or any other event occurs that entitles Beneficiary to declare the unpaid balance of the Debt due and payable in full under the Credit Agreement, or if Trustor fails to comply with any other term, condition, obligation or covenant contained in the Credit Agreement or this Deed of Trust or any rider thereto, or any other deed of trust, mortgage, trust indenture or security agreement or other instrument having priority over this Deed of Trust, or if any representation of Trustor herein was false or misleading, the Debt and any other money whose repayment is secured by this Deed of Trust shall immediately become due and payable in full, at the option of Beneficiary, and the total amount owed by Trustor shall thereafter bear interest at the rate(s) stated in the Credit Agreement. Beneficiary may then or thereafter advise Trustee of the default and of Beneficiary's election to have the Property sold pursuant to Trustee's power of sale in accordance with applicable law and deliver to Trustee any documentation as may be required by law. After giving any notices and the time required by applicable law, Trustee shall sell the Property, either in whole or in separate parcels or other part, and in such order as Trustee may choose, at public auction to the highest bidder for cash in lawful money of the United States which will be payable at the time of sale all in accordance with applicable law. Anything in the preceding sentence to the contrary notwithstanding, Beneficiary may apply the Debt towards any bid at any such sale. Trustee may postpone any such sale by providing such notice as may be required by law. Unless prohibited by law, any person, including the Trustor, Beneficiary or Trustee, may purchase at any such sale. Trustee shall apply the

4 3 6 0 (01/24/07) w8.2                                                    Page 3 of 7

Description: Los Angeles, CA Document-Year.DocID 2007.2090903 Page: 4 of 8
Order: 28982 Comment:

4091

proceeds of the sale as follows:   (i) to the expenses of the sale, including a reasonable trustee's fee and lawyer's fee;   (ii) to the obligations secured by this Deed of Trust; and, (iii)  the surplus, if any, shall go to the person(s) legally entitled thereto.

(b)   Trustee shall deliver to the purchaser at the sale its deed, without warranty, which shall convey to the purchaser the interest in the Property which Trustor had or had the power to convey at the time of execution of this Deed of Trust and any interest which Trustor subsequently acquired. The Trustee's deed shall recite the facts showing that the sale was conducted in compliance with all the requirements of law and of this Deed of Trust. This recital shall be prima facie evidence of such compliance and conclusive evidence of such compliance in favor of bona fide purchasers and encumbrancers for value.

(c)   To the extent permitted by law the power of sale conferred by this Deed of Trust is not an exclusive remedy.  In connection with any portion of the Property which is personal property, Beneficiary shall further be entitled to exercise the rights of a secured party under the Uniform Commercial Code as then in effect in the state of California.

(d)   By accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums so secured or to declare default for failure to so pay.

8.   Condemnation; Eminent Domain   In the event any portion of the Property is taken or damaged in an eminent domain proceeding, the entire amount of the award, or such portion as may be necessary to fully satisfy the Debt, shall, except as required by applicable law, be paid to the Debt.

9.   Fees and Costs   Trustor shall pay Beneficiary's and Trustee's reasonable cost of searching records, other reasonable expenses as allowed by law, and reasonable attorney's fees, in any lawsuit or other proceeding to foreclose this Deed of Trust; in any lawsuit or proceeding which Beneficiary or Trustee  prosecutes or defends to protect the lien of this Deed of Trust; and, in any other action taken by Beneficiary to collect the Debt, including without limitation any disposition of the Property under the State Uniform Commercial Code; and, any action taken in bankruptcy proceedings as well as any appellate proceedings.

10.   Reconveyance   Trustee shall reconvey the Property to the person entitled thereto, on written request of Beneficiary, or following satisfaction of the obligations secured hereby and Beneficiary and Trustee shall be entitled to charge Trustor a reconveyance fee together with fees for the recordation of the reconveyance documents unless prohibited by law.  If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or reconveyance of your security instrument for a reasonable period of time to enable us to post to your Credit Line Account any advances that you have received.

11.   Trustee; Successor Trustee   Beneficiary may, unless prohibited by law, appoint a successor Trustee from time to time in the manner provided by law.  The successor Trustee shall be vested with all powers of the original trustee. The Trustee is not obligated to notify any party hereto of a pending sale under any other deed of trust or of any action or proceeding in which Trustor, Trustee or Beneficiary shall be a party unless such action or proceeding is brought by the Trustee.

12.   Savings Clause   If a law, which applies to this Deed of Trust or the Credit Agreement and which sets maximum loan charges, is finally interpreted by a court having jurisdiction so that the interest or other loan charges collected or to be collected in connection with this Deed of Trust or the Credit Agreement exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already

4 3 6 0 (01/24/07) w8.2

Page 4 of 7

Description: Los Angeles, CA Document-Year.DocID 2007.2090903 Page: 5 of 8
Order: 28982 Comment:

4091

collected from Trustor which exceeded permitted limits will be refunded to Trustor. Beneficiary may choose to make this refund by reducing the principal owed or by making a direct payment. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

13. **Miscellaneous** This Deed of Trust shall benefit and obligate the heirs, devisees, legatees, administrators, executors, successors, and assigns of the parties hereto. The term "Beneficiary" shall mean the holder and owner of the Credit Agreement secured by this Deed of Trust, whether or not that person is named as Beneficiary herein. The words used in this Deed of Trust referring to one (1) person shall be read to refer to more than one (1) person if two (2) or more have signed this Deed of Trust or become responsible for doing the things this Deed of Trust requires. This Deed of Trust shall be governed by and construed in accordance with Federal law and, to the extent Federal law doesn't apply, the laws of the state of California. If any provision of this Deed of Trust is determined to be invalid under law, the remaining provisions of this Deed of Trust shall nonetheless remain in full force and effect.

14. **Beneficiary and Similar Statements** Beneficiary may collect a fee in the maximum amount allowed by law for furnishing any beneficiary statement, payoff demand statement or similar statement.

15. **Riders** If one (1) or more riders are executed by Trustor and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider            ☐ Other: _____
                                              (specify)
☐ Planned Unit Development Rider

4 3 6 0 (01/24/07) w8.2                                                      Page 5 of 7

Description: Los Angeles, CA Document-Year.DocID 2007.2090903 Page: 6 of 8
Order: 28982 Comment:

4091

By signing below Trustor accepts and agrees to the provisions of this Deed of Trust and of any rider(s) executed by Trustor concurrently therewith.

DATED at *Los Angeles, California* this *28* day of *August*, *2007*

TRUSTOR(S):

4 3 6 0 (01/24/07) w8.2

Page 6 of 7

Description: Los Angeles,CA Document-Year.DocID 2007.2090903 Page: 7 of 8
Order: 28982 Comment:

4091

8

STATE OF CALIFORNIA

COUNTY OF _Los Angeles_

On __8/14/07__ before me, ___Phyllis D. Barnes___ , Notary Public,
(here insert name)

personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

My Commission expires: __May 15, 2010__

My Commission number: __1667127__

(Seal or Stamp)

> PHYLLIS D. BARNES
> Commission # 1667127
> Notary Public - California
> Los Angeles County
> My Comm. Expires May 15, 2010

## REQUEST FOR FULL RECONVEYANCE
Do not record. To be used only when Trustor's
Indebtedness has been repaid and Credit Agreement cancelled.

TO: TRUSTEE_____

The undersigned is Trustee of the within Deed of Trust, and the legal owner and holder of the ___WaMu Equity Plus(TM)___ Agreement secured thereby. Said Deed of Trust is hereby surrendered to you for reconveyance and you are requested, upon payment of all sums owing to you, to reconvey, without warranty, to the person(s) entitled thereto, the right, title and interest now held by you thereunder.

DATE: _____

WASHINGTON MUTUAL BANK _____

By _____

Its _____

4 3 6 0 (01/24/07) w8.2                                                                 Page 7 of 7

Description: Los Angeles, CA Document-Year.DocID 2007.2090903 Page: 8 of 8
Order: 28982 Comment:

**Washington Mutual**

**WaMu Equity Plus™**
# AGREEMENT AND DISCLOSURE

This ___WaMu Equity Plus(TM)___ Agreement and Disclosure ("Agreement") governs your home equity line of credit account (the "Credit Line") issued by the Bank identified below and secured by the property at the address identified below. In this Agreement, we use the words "Borrower," "you" and "your" to mean each and all of the persons who sign this Agreement. The words "we," "us" and "our" mean the Bank or any successor or assign. The word "Card" means each credit card that can be used to obtain advances on the Credit Line, whether in the form of purchase transactions, cash advances or otherwise. A Card will be issued only if so indicated in Section I below. Our "business days" are Mondays through Fridays, but federal legal public holidays are excluded. You should read all of this Agreement, but for your convenience, we have set forth some of the rate, payment and fee information on the first two pages. You and we agree as follows:

## I. GENERAL INFORMATION:

Borrower(s):

| Bank: WASHINGTON MUTUAL BANK | Date of Agreement: 08/14/2007 | Account Number: l4091 |
|---|---|---|
| Credit Limit: $100,000.00 | Maturity Date: 08/18/2037 | Initial Draw Period: 120 Months |

| Effective Disbursement Date: 08/18/2007 The date on and after which you may begin to receive credit advances ("advances") from your Credit Line. This will be a date we specify, which shall follow the expiration of any rescission period required by law, our acceptance of this Agreement, and your meeting of all conditions for the Credit Line. | Card Access: You ☒ will ☐ will not receive a Card to access your Credit Line. If you will not have Card access, the terms and conditions in this Agreement regarding the Card will not be applicable. |
|---|---|

Discounts: The ANNUAL PERCENTAGE RATE used to calculate the periodic FINANCE CHARGES you pay may be discounted based on your other relationships with the Bank and on whether you authorize payments by our Auto Pay service. The available discounts shown in Table A below are explained further in Section VI 5(c). The specific discount amounts and discounted rates are shown in Tables B and C below.

### Table A - Discounts

| Type of Discount | No. of Accounts Required | Minimum Balance Required | Currently Eligible for Discount |
|---|---|---|---|
| Auto Pay Authorization | 1 | $0.00 | Yes |
| Account Relationships | 1 | $50,000.00 | Yes |
| First Mortgage Relationship | 1 | $0.00 | No |

Payments: Send payments to
WASHINGTON MUTUAL BANK
CONSUMER LENDING -- BR2CLFL
PO BOX 6868
LAKE WORTH, FL 33466
or, if a different address is stated in the Periodic Statement, send payments to that address.

## II. VARIABLE RATE ADVANCES:

Variable Rate Index: The Daily Periodic Rate and ANNUAL PERCENTAGE RATE on your Credit Line are subject to change daily based on changes in the "Variable Rate Index", which is the highest "Prime Rate" most recently published in the "Money Rates" table of *The Wall Street Journal.*

Variable Rate Margin: ___-0.010___ % (Does not include any discounts shown in Tables A, B or C)

Maximum Variable Rate: Daily Periodic Rate ___0.049315___ % ANNUAL PERCENTAGE RATE 18.000 %)
Minimum Variable Rate: Daily Periodic Rate ___0.000000___ % ANNUAL PERCENTAGE RATE 0.000 %)

Minimum Payment: For Variable Rate Advances, your minimum monthly payment ("Minimum Payment") during both the Draw Period and any Post Draw Period (defined in Section VI.4 below) will be equal to all accrued and unpaid FINANCE CHARGES, late fees and other fees and charges described below, plus any past due amounts and any outstanding balance of your Credit Line in excess of your Credit Limit.

Special Promotional Rates: ☐ If this box is checked, then the special Promotional Rates shown in Table B below will apply beginning on the Effective Disbursement Date and continuing until the following Promotional Rate Expiration Date: ___N/A___ .

### Table B - Current Rates on Variable Rate Advances

| Number of Discounts | Discount Percentage | Daily Periodic Rate | ANNUAL PERCENTAGE RATE | Daily Periodic Rate (Promotional Rate) | ANNUAL PERCENTAGE RATE (Promotional Rate) |
|---|---|---|---|---|---|
| No Discounts | 0.000 % | 0.022575 % | 8.240 % | N/A% | N/A% |
| 1 Discount | 0.250 % | 0.021890 % | 7.990 % | N/A% | N/A% |
| 2 Discounts | 0.500 % | 0.021205 % | 7.740 % | N/A% | N/A% |

## III. FIXED RATE LOAN OPTION ("FRLO"):

Fixed Rate Loan Option Index and Rates: The FRLO is your option to obtain fixed rate loans ("Fixed Rate Loans") under your Credit Line. Except as otherwise specified below under "Promotional Rates," if you choose to exercise the Fixed Rate Loan Option, the Daily Periodic Rate and ANNUAL PERCENTAGE RATE will be determined based on the "FRLO Index", which is the highest "Prime Rate" most recently published in the "Money Rates" table of *The Wall Street Journal*, plus a "FRLO Margin" of ___14.0___ %.

Promotional Rates: We may, at our sole discretion and without prior notice, provide a Fixed Rate Loan at a discounted ANNUAL PERCENTAGE RATE, that is, an ANNUAL PERCENTAGE RATE that is lower than the sum of the FRLO Index plus the FRLO

3 3 3 6 6 (06/14/07) w8.3

Margin stated above. The Daily Periodic Rate will also be reduced. These are called "Promotional Rates." If we provide Promotional Rates, they will be shown in a confirmation form that we provide you. FRLO Promotional Rates will remain in effect for the term of the FRLO.

### Table C - Current Rates on Fixed Rate Loans

| Number of Discounts | Discount Percentage | Daily Periodic Rate | ANNUAL PERCENTAGE RATE | Daily Periodic Rate (Promotional Rate) | ANNUAL PERCENTAGE RATE (Promotional Rate) |
|---|---|---|---|---|---|
| No Discounts | 0.000 % | 0.049315 % | 18.000 % | 0.021616 % | 7.890 % |
| 1 Discount | 0.250 % | 0.048630 % | 17.750 % | 0.020932 % | 7.640 % |
| 2 Discounts | 0.500 % | 0.047945 % | 17.500 % | 0.020247 % | 7.390 % |

*Rates are examples based on a $50,000 FRLO with an Amortizing Minimum Payment and a Term of five (5) years.

Maximum FRLO Rate:   Daily Periodic Rate 0.049315 % (ANNUAL PERCENTAGE RATE 18.000 %)
Minimum FRLO Rate:   Daily Periodic Rate 0.008219 % (ANNUAL PERCENTAGE RATE 3.000 %)

FRLO Confirmation [X] If this box is checked, you have chosen to exercise your option to obtain a Fixed Rate Loan on the Effective Disbursement Date. (If you have chosen to obtain a second Fixed Rate Loan on the Effective Disbursement Date, you must complete a separate form that we will provide to you upon request.) The terms of your Fixed Rate Loan will be as follows:

| Type:  INTEREST-ONLY FIXED RATE LOAN OPTION | FRLO Sub-Account No.: 0778444125 | Amount: $78,979.95 |
|---|---|---|
| Transaction Fee:  There is no Fixed Rate Loan Option Fee for any Fixed Rate Loan obtained upon opening the Credit Line. | Daily Periodic Rate: 0.021068 | Term: 60 Months |

| Buydown Fee (FINANCE CHARGE) __N/A__ (Equal to __N/A__ % of the Fixed Rate Loan Amount | ANNUAL PERCENTAGE RATE:   7.690 %  This rate has been reduced by 0.000% due to payment of a Buydown Fee, and by 0.5% due to other relationships with the Bank shown in Table A above, if applicable. |
|---|---|

Minimum Payment
The initial Minimum Payment for the Fixed Rate Loan is $506.13.   The Minimum Payment that is due will vary depending on the number of days in the billing period, whether your payment is received on its due date and whether you make any payments to principal.   On 08-18-12, the entire outstanding principal balance of the Fixed Rate Loan, together with all accrued and unpaid FINANCE CHARGES and all other fees and charges relating to the Fixed Rate Loan, automatically will be transferred to the balance of your Variable Rate Advances.

Payment Method:
[ ] You have elected to make your Fixed Rate Loan payments by payment coupon or billing statement.   If you do not receive your payment coupon or billing statement before your first payment is due, please send your payment, including your FRLO sub-account number (if any), to:
WASHINGTON MUTUAL BANK
CONSUMER LENDING – BR2CLFL
PO BOX 6868
LAKE WORTH, FL 33466
or you may make your payment at any Washington Mutual Financial Center.

[X] You have elected to make your Fixed Rate Loan payments by our Auto Pay service.   You will need to sign a separate Auto Pay Automatic Loan Payment Authorization Form.

How to Get a Fixed Rate Loan After Closing: Call 1-888-800-8738 toll-free (for TDD, call 800-735-2922)   or, if a different telephone number is stated in the Periodic Statement, call that telephone number.

### Table D - Fixed Rate Loan Terms

| Type of Minimum Payment | Fixed Rate Loan Dollar Amount | Maximum Permissible Term |
|---|---|---|
| Amortizing Minimum Payment | Up to $19,999.99 | Up to 120 months (10 years). If the Term extends beyond the Maturity Date, the principal amount will not fully amortize, and the remaining principal will be due and payable in full on the Maturity Date. |
| Amortizing Minimum Payment | $20,000.00 or more | Up to 240 months (20 years). If the Term extends beyond the Maturity Date, the principal amount will not fully amortize, and the remaining principal will be due and payable in full on the Maturity Date. |
| Interest Only Minimum Payment | Any amount | 3, 5, 7 or 10 years, but the term must conclude before the Maturity Date |

## IV.  FEES AND CHARGES:

FINANCE CHARGES and Other Fees and Charges at Closing:  You agree to pay the following FINANCE CHARGES and other fees and charges, which will be charged to your Credit Line on the Effective Disbursement Date unless paid to us on or before that date.  Periodic FINANCE CHARGES will begin to accrue immediately on these amounts if charged to your Credit Line.

FINANCE CHARGES:                                   Other Fees and Charges:

* These items will be paid by the Bank and charged to your Credit Line

Additional FINANCE CHARGES: You agree to pay the following additional FINANCE CHARGES

Cash Advance Fee. A cash advance fee FINANCE CHARGE of 2.00% of each cash advance obtained on the Card, or $2.00, whichever is greater.

Fee for Small Variable Rate Advance. If, at our sole option, we elect to honor a request for a Variable Rate Advance of less than $100.00, a transaction FINANCE CHARGE of 4.00% of the amount of the advance. This FINANCE CHARGE will not be imposed for Card transactions.

Fee for Lien Subordination. If, at our sole option, we agree to subordinate the lien of the Security Instrument, a transaction FINANCE CHARGE of _$50.00 - $250.00_ .

3 3 3 6 6 (06/14/07) w8.3                                                   Page 2 of 9

████ 4091

**Wire Transfer Fee.** A wire transfer FINANCE CHARGE of _$30.00_ for each advance that you initiate by a wire transfer.

**Courier Service Fee.** A courier service FINANCE CHARGE of _$30.00_ for each transmittal of documents that you request which we send by a delivery service.

**Fixed Rate Loan Option Fee.** A transaction fee FINANCE CHARGE of _$50.00_ for each Fixed Rate Loan that you receive. The Fixed Rate Loan Option Fee will be waived for any Fixed Rate Loan received on the Effective Disbursement Date or for the first Fixed Rate Loan received subsequently.

**Buydown Fee.** If we offer you the option to pay a fee in exchange for a reduced ANNUAL PERCENTAGE RATE for a Fixed Rate Loan, a transaction fee FINANCE CHARGE of 4.000% of the amount of the Fixed Rate Loan will be charged in return for a reduction of 0.250% in the ANNUAL PERCENTAGE RATE of the Fixed Rate Loan. At our sole discretion, we reserve the right to charge you a lesser Buydown Fee and/or offer a greater reduction in the ANNUAL PERCENTAGE RATE at the time you obtain a Fixed Rate Loan.

**Additional Other Fees and Charges:** You agree to pay the following additional other fees and charges:

**Annual Fee.** An annual fee of _$0.00_ ("Annual Fee"). The Annual Fee will be charged on the first anniversary of the Effective Disbursement Date and on every anniversary thereafter during the Draw Period. The Annual Fee is nonrefundable and will be imposed regardless of the balance and status of the Credit Line.

**Late Fee and Collection Charges.** In addition to our other rights upon default, if we do not receive the Minimum Payment on the Variable Rate Advances or any Fixed Rate Loans within _fifteen (15)_ days after the Payment Due Date shown on your Periodic Statement (or, if applicable, on any payment coupon that we provide you), you will be charged a late fee of the greater of _$15.00_ or _5.000_ % of the Minimum Payment. Upon your default under this Agreement, you will pay all of our reasonable costs and collection charges, whether or not there is a lawsuit, including, without limit, attorneys' fees and legal expenses, including without limit, for bankruptcy or civil proceedings, our efforts to modify or vacate an automatic stay or injunction, appeals, and any anticipated post-judgment collection services, and whether or not such are incurred by our employees or third parties.

**Overlimit Fee.** An overlimit fee of _$20.00_ for each advance from the Credit Line that causes you to exceed your Credit Limit.

**Dishonored Payment Fee.** A fee of _$20.00_ if you make a payment on your Credit Line (including any payment on a Fixed Rate Loan) with a check, draft, or other item or transfer (including an Auto Pay service transfer) that is dishonored for any reason.

**Stop Payment Fee.** A fee of $20.00 when you request a stop payment on a Check (as defined in Section VI.6(a) below.) A stop payment shall be effective for six (6) months (or, if applicable, such longer period as provided by law) and must be delivered to us in the manner prescribed by law or by method acceptable to us in our sole discretion and in sufficient time for us to act. If a stop payment notice expires, you must renew it as set forth above and you will be assessed an additional stop payment fee. There is no right to stop payment on transactions by use of a Card or other means of access other than a Check.

**Cancellation Fee.**
If you cancel your Credit Line during the first '36' months (30 months in NC) following the Effective Disbursement Date, you will be charged a cancellation fee equal to .125% of the Credit Limit or $500.00, whichever is greater.

**Foreign Currency Transactions.** If you use the Card to make a purchase or obtain an advance in a foreign currency (the "transaction currency"), it will be converted by Visa International or MasterCard International (depending on which Card we issue from time to time) into U.S. Dollars (the "billing currency"). The details for conversion are discussed below in Section VI.6. We do not determine the exchange rate that is used and we do not add or subtract any adjustment to the exchange rate.

**Reject Fee.** A reject fee of _$20.00_ if a Check or other advance request (other than for a Card transaction) is not honored for any reason.

**Copy and Research Fees.** A copy fee of _$1.00_ per item and research fees of _$10.00_ per hour will be assessed if you request copies of Checks or other research relating to your Credit Line.

**Release Fee.** A fee of _$65.00_ in connection with the release, discharge or reconveyance of the Security Instrument (as defined in Section VI.3 below).

**Other Institution Fees.** Fees imposed by other institutions if you use the Card to obtain cash advances through their ATMs.

---

## V.  STATE-SPECIFIC NOTICES:

For the State of:  CALIFORNIA

**Due on Transfer.** The Security Instrument (as defined in Section VI.3 below) contains the following provisions relating to certain sales and transfers of the Property:
Subject to applicable law, the entire Debt shall become immediately due and payable in full upon sale or other transfer of the Property or any interest therein by Trustor by contract of sale or otherwise including, without limit, any further encumbrance of the Property.

**Governing Law.** This Agreement and your Credit Line will be governed by and interpreted in accordance with the laws of the United States of America and, to the extent that such laws are not applicable, with the internal laws of the State of _Nevada_ (without giving effect to any choice of law rule that would cause the application of the laws of any other jurisdiction to the rights and duties of the parties). Interest shall be charged at rates allowed to any class of lender by the laws of the State of _Nevada_.

## VI. STANDARD TERMS AND CONDITIONS:

**1. Promise to Pay.** You promise to pay to us, or our order, all advances from the Credit Line plus all FINANCE CHARGES, fees, charges, expenses and other amounts required by the terms of this Agreement. All amounts outstanding under the Credit Line that are covered by the Fixed Rate Loan Option described in Section VII below are sometimes referred to in this Agreement as "Fixed Rate Loans." All other amounts outstanding under the Credit Line are sometimes referred to in this Agreement as "Variable Rate Advances." Unless otherwise provided in this Agreement, any amounts charged to the Credit Line shall be treated as Variable Rate Advances. If there is more than one of you, each is jointly and severally liable under this Agreement. Each Borrower alone may cancel the Credit Line, receive advances from the Credit Line and, except as stated below, take all actions with respect to the Credit Line. If Section I above indicates that you will receive a Card to access your Credit Line, each of you requests that we issue each Borrower a Card.

Your use of the Card at Automated Teller Machines ("ATMs") is subject to our rules relating to ATM transactions.

**2. Credit Limit.** This Agreement covers a revolving line of credit in the amount shown in Section I above (the "Credit Limit"). During the Draw Period described below, you may obtain advances from the Credit Line up to the Credit Limit, repay any portion of the amounts advanced and obtain additional advances up to the Credit Limit. If there is more than one of you, each of you alone has the right to borrow up to the full amount of the Credit Limit and each of you is liable for all advances made to any of you. You agree not to request or obtain an advance that will make the Credit Line balance exceed the Credit Limit. We may, at our option, make advances in excess of the Credit Limit. At our request, you will immediately repay the amount by which the balance of the Credit Line exceeds the Credit Limit.

**3. Security Instrument.** To secure the performance of your obligations under this Agreement, one or more of you is giving us a deed of trust, deed to secure debt, mortgage or other security agreement (the "Security Instrument") on the real property located at the address specified in Section I above and other property described therein (the "Property"). If the title to the Property is held by a trust, references in this Agreement to "you" and "your" shall include, with respect to the Property and as applicable, a person who is signing the Security Instrument as a trustee of the trust. The Security Instrument secures all advances and other amounts owed under this Agreement as well as after-acquired property located on or attached to the Property. You agree to perform all of your obligations under the Security Instrument. Regardless of the terms of any other security instrument that you have with us, no personal or real property, other than the Property, secures your obligations under this Agreement.

You will perform on a timely basis all payment and other obligations under the terms of any other deed of trust, mortgage, deed to secure debt or other security agreements or leases on the Property, as well as under any note or other obligation the performance of which is secured by the same.

**4. Draw Period and Post Draw Period; Payments.** You may obtain advances from the Credit Line for the number of years after the Effective Disbursement Date described in Section I above (the "Draw Period"). At our option, we may extend the Draw Period for up to two (2) additional periods that are each no longer than the initial Draw Period stated in Section I above. The period of time, if any, between the end of the Draw Period and the Maturity Date is the "Post Draw Period." If the Draw Period is for ten (10) years, the Post Draw Period will be for twenty (20) years. If the Draw Period is for twenty (20) years, the Post Draw Period will be ten (10) years. For example if the Draw Period is for thirty (30) years, there will not be a Post Draw Period. During the Post Draw Period, if any, you will no longer be able to obtain advances from the Credit Line.

Payments for both Variable Rate Advances and any Fixed Rate Loans are due monthly. The payment due date (the "Payment Due Date") may be different for Variable Rate Advances and Fixed Rate Loans, and each Fixed Rate Loan may have its own Payment Due Date. At our sole option, we may change the Payment Due Dates at any time, and we may establish one Payment Due Date each month for all payments due with respect to the Variable Rate Advances and each Fixed Rate Loan. The Payment Due Date will be stated in your periodic billing statement (the "Periodic Statement") or, if applicable, on any payment coupons that we provide you.

For Variable Rate Advances, your minimum monthly payment ("Minimum Payment") during both the Draw Period and any Post Draw Period will be equal to the amount specified in Section II above as the Minimum Payment. Paying the Minimum Payments will not repay the principal that is outstanding on the Credit Line. You will be required to pay the entire outstanding balance of the Variable Rate Advances (together with all accrued and unpaid FINANCE CHARGES relating to the Variable Rate Advances and all other related amounts that you owe under this Agreement) in a single

payment on the Maturity Date. We are not obligated to refinance any amount due on the Maturity Date. Your payments for any Fixed Rate Loans are described in Section VII below. For both Variable Rate Advances and Fixed Rate Loans, the following shall apply to payments. Payments must be made in U.S. Dollars. When you pay by check, funds must be drawn on a U.S. office of the financial institution. All payments shall be mailed, postage prepaid, to the address that appears on your Periodic Statement (or, if applicable, on any payment coupons that we provide you) for receipt of payments. Any payments that are not received on a business day, or that are received after 5:00 p.m. (prevailing Pacific Time) on a business day, will be treated as having been received on the next following business day. We can accept and apply any late or partial payments, or payments marked "Payment in Full" or similar statement, or with a request to apply a payment in a particular manner, to amounts you owe as set forth in this Agreement without liability on our part and without losing any of our rights under this Agreement. You will not make payments from funds obtained from the Credit Line or any other line of credit from the Bank or any of its affiliates. Payments accepted by the Bank on your Credit Line may be subject to temporary holds on the availability of funds before the payment amount may be re-advanced.

Each month, you will be required to send us one payment for the Variable Rate Advances and an additional separate payment for each Fixed Rate Loan. At our sole option, we may change this process at any time and require you to send us a single payment for both the Variable Rate Advances and your Fixed Rate Loan(s). Each payment will first be applied to accrued and unpaid periodic FINANCE CHARGES then to any principal due, then to other FINANCE CHARGES then to other fees and charges, and then to the unpaid principal balance. If you make a payment but do not specify where it should be applied, we will apply the payment in our discretion to outstanding Fixed Rate Loan(s) and/or Variable Rate Advances.

**5. Periodic FINANCE CHARGE; Daily Periodic Rate; ANNUAL PERCENTAGE RATE.** The date on which periodic FINANCE CHARGES begin to accrue will depend upon the type of advance you obtain from the Credit Line. Periodic FINANCE CHARGES will begin to accrue from the date that we initiate a wire transfer, the date that you request to advance from one of our Financial Centers, the effective date of a Card transaction, the effective date of your withdrawal of funds from an ATM, the date that a Check (as defined below) is processed by us, the date of any increase to the balance of the Variable Rate Advances in accordance with Section VI.11(c) or Section VII.3(b), or Section VII.4 below, the date that we prepare a check to fund a Fixed Rate Loan on the Effective Disbursement Date or, thereafter, on the effective date of the conversion of all or any portion of the Variable Rate Advances and/or one or more existing Fixed Rate Loans into a new Fixed Rate Loan and, for any other types of advances, the date the advance is made. Periodic FINANCE CHARGES will continue to accrue until all amounts subject to the periodic FINANCE CHARGES are paid in full. There is no free ride period that would allow you to avoid paying a periodic FINANCE CHARGE on advances you obtain from the Credit Line.

During both the Draw Period and any Post Draw Period, the periodic FINANCE CHARGE on the Variable Rate Advances for each billing period is a function of the Daily Periodic Rate (as described below), the Average Daily Balance (as described below), and the number of days in the billing period, as follows:

(a) The Daily Balance of your Variable Rate Advances for each day of the billing period will be all Variable Rate Advances due at the beginning of that day, plus all new Variable Rate Advances (including, without limitation, any increase to the balance of the Variable Rate Advances in accordance with Section VI.11(c) or Section VII.3(b), or Section VII.4 below), less all payments and credits relating to Variable Rate Advances received that day. Nothing in this Section VI.5 authorizes you to obtain advances from the Credit Line during the Post Draw Period.

(b) The Average Daily Balance is the sum of the Daily Balances of all days in the billing period divided by the number of days in the billing period.

(c) The ANNUAL PERCENTAGE RATE and Daily Periodic Rate may vary. Except as stated below, the ANNUAL PERCENTAGE RATE will be equal to the sum of the Variable Rate Index stated in Section II above plus the Variable Rate Margin stated in Section II above, and the Daily Periodic Rate will be equal to the ANNUAL PERCENTAGE RATE divided by 365 (366 in a leap year). The ANNUAL PERCENTAGE RATE will be reduced by the amount of any applicable discounts shown in Table B in Section II above. The total discount will be based on the number of discounts that are applicable depending on whether you qualify for a particular discount at the time the ANNUAL PERCENTAGE RATE is determined. You will be eligible for a discount for "Auto Pay" if you authorize automatic loan payments for Variable Rate Advances using our Auto Pay service from an account at the Bank that you designate. If you qualified for an Auto Pay discount, you will no longer qualify if you or we cancel the Auto Pay or if you change to an automatic debit arrangement involving an account at another financial institution. You may separately decide whether you wish to authorize Auto Pay for the Variable Rate Advances and for each Fixed Rate Loan. Your

3 3 3 6 6 (06/14/07) w8.3                                                                                                    Page 4 of 9

decision whether or not to authorize our Auto Pay service will not affect the availability of the Variable Rate Advances or Fixed Rate Loans. You will be eligible for a discount for "Account Relationships" as indicated in Table A if you maintain at least the specified number of accounts and the dollar amount of deposit, credit and investment accounts with the Bank, or its affiliate, as defined by the Bank. If you qualified for an "Account Relationships" discount, you will no longer qualify if the combined balances of the accounts fall below the minimum required. Further, an account will no longer be considered for the combined balance calculation if it becomes 30 or more days past due, is closed, or if no Borrower continues to be on title for the account. You will be eligible for a discount for a "First Mortgage Relationship" as indicated in Table A if you have outstanding the specified loan account and balance with the Bank, as defined by the Bank. If you qualified for a "First Mortgage Relationship" discount, you will no longer qualify if the loan used to obtain the discount becomes 30 or more days past due, is paid off or otherwise closed, or if no Borrower continues to be a borrower of record for the loan. Any discount marked "Not Applicable" or with similar language in Table A will not be available to you. If you do not qualify for a discount initially, but subsequently do so, the discount (up to the maximum number and amount of discount stated in Table B above) will be put into effect as of a date that we select.

Except as otherwise provided in this Section VI.5(c), the ANNUAL PERCENTAGE RATE and Daily Periodic Rate will change, beginning on the day following the Effective Disbursement Date, on each day that the Variable Rate Index changes. The Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE for Variable Rate Advances will never be more than the maximum rates, and will never be less than the minimum rates, shown in Section II above. Increases in the Daily Periodic Rate and ANNUAL PERCENTAGE RATE will increase your Minimum Payment, periodic FINANCE CHARGES and your final payment due on the Maturity Date.

(d) If Section II above indicates that special promotional rates will apply, then the initial Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE will be lower than the sum of the Variable Rate Index plus the Variable Rate Margin. These lower rates are called "Promotional Rates." The Daily Periodic Rate will be equal to the ANNUAL PERCENTAGE RATE divided by 365 (366 in a leap year). If you are provided with Promotional Rates, the ANNUAL PERCENTAGE RATE will be reduced by the amount of any applicable discount shown in Table B in Section II above. The total discount will be based on the number of discounts that are applicable depending on whether you qualify for a particular discount at the time the ANNUAL PERCENTAGE RATE is determined. A description of these discounts is found in Section VI.5(c). If you do not qualify for a discount initially, but subsequently do so, the discount (up to the maximum discount stated in Table B above) will be put into effect as of a date that we select. If you are provided with Promotional Rates, the Promotional Rates will remain in effect until the Promotional Rate Expiration Date stated in Section II above, on which date the higher Daily Periodic Rate and corresponding ANNUAL PERCENTAGE RATE determined in accordance with Section VI.5(c), (f) will apply.

(e) The current Daily Periodic Rates and corresponding ANNUAL PERCENTAGE RATES are specified in Table B in Section II above. These rates will depend on (i) whether you have qualified for one or more discounts, (ii) whether you are being provided with Promotional Rates, or (iii) whether you have both qualified for one or more discounts and are being provided with Promotional Rates.

(f) If you have qualified for one or more discounts in the ANNUAL PERCENTAGE RATE (including any Promotional Rate), but thereafter you no longer qualify, the discount(s) will be eliminated on the date that you fail to qualify. On that date, the ANNUAL PERCENTAGE RATE will increase by the amount of the discount(s) for which you no longer qualify, and the Daily Periodic Rate will increase to the new ANNUAL PERCENTAGE RATE divided by 365 (366 in a leap year). For example, if you initially qualified for two discounts, but later qualify for only one discount, the increase in the ANNUAL PERCENTAGE RATE will equal the amount by which "2 discounts" exceeds "1 discount" in Table B. However, the increased Daily Periodic Rate and ANNUAL PERCENTAGE RATE will not be greater than the maximum rates stated in Section II above. Increases in the Daily Periodic Rate and ANNUAL PERCENTAGE RATE will increase your Minimum Payment, periodic FINANCE CHARGES and your final payment due on the Maturity Date.

(g) The "Variable Rate Index" is stated in Section II above. If the Variable Rate Index, or any substitute Variable Rate Index, is no longer available, we will choose a new Variable Rate Index. The new Variable Rate Index will have a historical movement substantially similar to that of the prior Variable Rate Index, and the Variable Rate Margin will be changed so that the new Variable Rate Index plus the Variable Rate Margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the ANNUAL PERCENTAGE RATE in effect at the time the prior Variable Rate Index becomes unavailable (plus any increase in the ANNUAL PERCENTAGE RATE that results from any termination of any Promotional Rate and/or the discounts, as described in Section VI.5(d), (f)).

(h) The Daily Periodic Rate may change within a single billing period. If only one Daily Periodic Rate is in effect during the billing period, the periodic FINANCE CHARGE for the billing period will be calculated by first multiplying the Average Daily Balance by the applicable Daily Periodic Rate, and then multiplying that amount by the number of days in the billing period. If more than one Daily Periodic Rate is in effect during a billing period, the periodic FINANCE CHARGE for the billing period will be calculated by: (i) calculating a periodic FINANCE CHARGE for each Daily Periodic Rate by first multiplying that Daily Periodic Rate by the Average Daily Balance, and by then multiplying that amount by the number of days that such Daily Periodic Rate is in effect during the billing period, and (ii) by then adding together the periodic FINANCE CHARGES that are so determined for each such Daily Periodic Rate.

The ANNUAL PERCENTAGE RATE for both the Variable Rate Advances and the Fixed Rate Loans do not include costs other than interest. The periodic FINANCE CHARGE and ANNUAL PERCENTAGE RATE for the Fixed Rate Loans are described in Section VII below.

6. Variable Rate Advances. Provided you are not in default and your right to obtain advances has not been terminated, suspended or cancelled, you may obtain Variable Rate Advances during the Draw Period on and after the Effective Disbursement Date. All advances, other than by Card transactions outside the United States (as described below), shall be in U.S. Currency. You may obtain Variable Rate Advances as follows:

(a) Writing a preprinted check ("Check") that we supply to you for use with your Credit Line. The signature of only one Borrower is required for each Check.

(b) Using the Card to effect purchases, obtain cash advances at authorized ATMs (using the separate Personal Identification Number ("PIN") that we will supply to each of you), obtain cash advances at other locations or otherwise obtain advances.

(c) Requesting an advance in person at any of our Financial Centers. You will need to provide acceptable identification to obtain an advance.

(d) A wire transfer of funds to an account that you designate. Wire transfers are subject to our rules governing wire transfer transactions.

You authorize us to make available additional means of obtaining advances. Those advances will also be subject to this Agreement.

In addition, the balance of the Variable Rate Advances may be increased in accordance with Section VI.11(c) or Section VII.3(b), or Section VII.4(c) below.

If you use the Card to make a purchase or obtain an advance in a foreign currency (the "transaction currency"), it will be converted by Visa International or MasterCard International (depending on which Card we issue from time to time) into U.S. Dollars (the "billing currency"). Visa International or MasterCard International, as applicable, will use the procedures set forth in its operating regulations or conversion procedures in effect at the time the transaction is processed. Currently, the Visa International operating regulations state that the exchange rate between the transaction currency and the billing currency is: (i) a rate selected by Visa from the range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives or (ii) the government-mandated rate in effect for the applicable central processing date, in each instance, plus or minus an adjustment determined by the card issuer. The exchange rate for the applicable central processing date may differ from the rate in effect on the transaction date or the posting date. Currently, the MasterCard International conversion procedures state that the exchange rate between the transaction currency and the billing currency is either a wholesale market rate or a government-mandated rate as of a date selected by MasterCard International, in each instance plus or minus an adjustment determined by the card issuer. The exchange rate used by MasterCard International may differ from the rate in effect on the transaction date or the posting date. Regardless of which Card is used, the exchange rate used may be the same as, greater than, or less than the rate that would be available through a financial institution in the country in which the purchase or advance occurred. We do not determine the exchange rate that is used and we do not add or subtract any adjustment to the exchange rate.

7. Minimum Advances and Other Limitations. Each Variable Rate Advance, other than a purchase transaction with a Card, must be not less than $100.00. We may, at our option, make Variable Rate Advances of less than $100.00. At our option, we may (but reserve the right not to) honor any requests for advances in the following circumstances:

(a) Your credit privileges have been cancelled, suspended or terminated.

(b) Your Credit Limit is currently exceeded or would be exceeded if we honored the advance requested.

(c) Your Check is post-dated (written and presented before the date on the item) or stale dated (presented more than six (6) months after the date of the item).

(d) Your Check bears a restriction or notation.

(e) Your Checks have been reported lost or stolen or, if advances requiring a PIN have been authorized, you have reported that your PIN has been compromised.

(f)  You are in material default of this Agreement or would be so if we honored the advance request.

(g)  We receive conflicting instructions or demands from any of you.

(h)  You have asked us to prepare a payoff demand statement setting forth the amounts required to satisfy your obligations under this Agreement.

You agree to hold us harmless from and indemnify us against any claim or loss the payee or any other endorser or depositing or collecting bank may assert regarding such restrictions, notations or post or stale dated items. You further agree to indemnify and hold us harmless for any claim or loss relating to honoring or refusing to honor any instructions or demands which we believe may be conflicting.

Our liability, if any, for wrongful dishonor of an advance request is limited to your actual damages, shall not include consequential damages and in no event will exceed the amount of the advance request.

Checks may be processed mechanically based on information encoded on the item. Checks not meeting our format and encoding specifications may not be honored. The signature on each Check should match the signature on file with us, however, we may not verify the signature if the item is processed mechanically. Subject to applicable law, we will only pay Checks that are presented to us by another financial institution. We do not "certify" Checks drawn on your Credit Line.

8.  Illegal Transactions. You will not use any advance, the Card, a Check or other access device to engage in any Internet gambling or illegal transaction (including, without limitation, illegal gambling). We are not responsible for preventing you from doing so.

9.  PeriodicStatement. As required by law, we will send you a Periodic Statement showing all new transactions since the prior Periodic Statement closing date and other information relating to the Credit Line. The Periodic Statements may be sent on other than a calendar month basis. We reserve the right to change the Periodic Statement closing date. We may choose not to return Checks along with your Periodic Statement.

10. Loss or Theft. Notify us if any unauthorized use of your Credit Line has occurred or may occur as a result of loss or theft of one or more of your Checks, Cards or other access device or if you believe someone else knows your PIN. The best way to notify us is by calling us. Call us at 800-556-5678 (for TDD, call 800-735-2922) or, if a different telephone number is stated in the Periodic Statement, call that number. You may also write us at the address stated in Section VI.16 below. You agree to reasonably assist us in determining the facts and circumstances relating to any unauthorized use of your Credit Line.

11. Termination and Acceleration; Suspension of Advances and Reduction of Credit Limit; Other Remedies.
(a) We may terminate your Credit Line and require you to pay us the entire outstanding balance of the Credit Line (including the outstanding balance of any Fixed Rate Loans), together with all other fees, charges and amounts owing under this Agreement or the Security Instrument, in one payment, if any of the following happen:
(i)  You commit fraud or make a material misrepresentation at any time in connection with the Credit Line. This can include, for example, a false statement about your income, assets, liabilities or any other aspect of your financial condition.
(ii)  You do not meet any of the repayment terms of this Agreement.
(iii)  Your action or inaction adversely affects the Property or our rights in the Property. This can include, for example, failure to maintain required insurance or pay taxes on the Property, waste or destructive use of the Property which impairs our security, death of the last Borrower, death of all but one Borrower which impairs our security, transfer of title or sale of the Property without our permission, permitting the creation of a senior lien on the Property, foreclosure by the holder of a prior lien on the Property or use of the Property for an illegal purpose that subjects the Property to seizure.

If we terminate the Credit Line, no additional advances will be made and the entire outstanding balance of the Credit Line (including the outstanding balance of any Fixed Rate Loans) will be immediately due and payable without prior notice, except as may be required by law, and you agree to pay immediately such amount plus any other amounts due under this Agreement.

Failure to meet the repayment terms of any portion of the Credit Line, such as for Fixed Rate Loans or for Variable Rate Advances, will be considered failure to meet the repayment terms of the entire Credit Line, and this will give us the right to demand the immediate repayment of the entire outstanding balance of the Credit Line and to exercise any of our other rights under this Agreement. Likewise, payment of only a portion of the amount required under the repayment terms of this Agreement will not satisfy your repayment obligations for

the entire Agreement. If a partial payment is made, we reserve the right to accept the payment and apply it to the outstanding balance of the Credit Line in accordance with Section VI. 4 without waiving our right to demand immediate payment of the entire outstanding balance of the Credit Line or to exercise any of our other rights under this Agreement.

(b)  In addition to any other rights we may have, we can suspend additional advances (including any Fixed Rate Loans) or reduce your Credit Limit during any period in which any of the following are in effect:
(i)  The value of the Property declines significantly below the value as determined by us at the time you applied for your Credit Line. This includes, for example, a decline such that the difference between the Credit Limit and the available equity is reduced by fifty percent (50.00%) and may include a smaller decline depending on individual circumstances.
(ii)  We reasonably believe that you will be unable to fulfill your payment obligations under this Agreement due to a material adverse change in your financial circumstances.
(iii)  You are in default of a material obligation of this Agreement. We consider all of your obligations to be material. Categories of material obligations include, for example, the events described above permitting us to terminate, obligations and limitations relating to your receipt of advances, obligations concerning maintenance or use of the Property, obligations to perform the terms of the Security Instrument or any other deed of trust, mortgage, deed to secure debt or other security agreement or lease on the Property (and to perform on any notes or other obligations secured by the same), obligations to notify us and to provide documents and information to us (such as updated financial information), and obligations to comply with applicable law (such as zoning restrictions).
(iv)  We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.
(v)  The priority of our security interest in the Property is adversely affected by government action to the extent that the value of the security interest is less than 120.00% of the Credit Limit.
(vi)  We have been notified by a government authority that continued advances may constitute an unsafe and unsound business practice.
(vii) If the maximum ANNUAL PERCENTAGE RATE stated in Section II above has been reached.

Regardless of any action that we take, all other terms of this Agreement will remain in effect and be binding upon you.

(c)  If, at any time, we have the right to terminate your Credit Line under Section VI.11(a) above, we may, at our sole option and without prior notice to you, then or thereafter convert any or all of your Fixed Rate Loans (including both the unpaid principal balance of the Fixed Rate Loans plus all accrued and unpaid FINANCE CHARGES) to the balance of your Variable Rate Advances, which will then accrue FINANCE CHARGES in accordance with Section VI.5 above and be subject to all other provisions of this Agreement relating to Variable Rate Advances. No exercise of this right to convert and nothing in this Section VI.11(c) shall constitute an election of remedies or a waiver of any of our rights under the remaining provisions of this Section VI.11, the remainder of this Agreement, the Security Instrument or at law or in equity.
(d)  Any Borrower may cancel the Credit Line or suspend the right to obtain advances by sending a written notice of cancellation or suspension to the address stated in Section VI.16 below. The notice must identify the account number of the Credit Line and be signed by at least one Borrower. The notice will be effective when it has been received and accepted by us. If the right to obtain advances is suspended at the request of a Borrower, advances will be reinstated only following our receipt and approval of a written request for reinstatement that has been signed by each of you.
(e)  If the Credit Line is cancelled, suspended or terminated, you agree not to attempt to write or deliver any Checks, use a Card or any other access device or otherwise obtain advances. You will return all Cards and unused Checks to us. You remain liable for any use of Checks, Cards or other access devices and any advances taken even after any cancellation by you or us, termination or suspension. If your Credit Line is cancelled or terminated, subject to applicable law, we may delay the cancellation or release of the Security Instrument for a reasonable period of time to enable us to post to your Credit Line any advances that you have received.

Our rights under this Agreement shall be in addition to any other rights we may have under the Security Instrument or at law or in equity.

12. Delay in Enforcement; Corrections. To the extent permitted by law, we may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right and if we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. We may correct any inaccuracies that we find with respect to the Credit Line or any Periodic Statements.

13. Presentment. You waive any statutes of limitations, and any legal requirements of presentment, demand, protest, notice of dishonor and notice of protest of this Agreement.

3 3 3 6 6 (06/14/07) w8.3                                          Page 6 of 9

4091

**14. Credit Information.** You will provide us with a current financial statement, a new credit application, or both, at any time upon our request. We may obtain credit reports on you at any time for the purpose of reviewing or collecting your Credit Line. You authorize us to release information to others (such as credit bureaus, merchants, other financial institutions and any of our affiliate companies) about our transactions or experiences with you. **WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT.**

**15. Transfer and Assignment.** Without prior notice to or approval from you, we reserve the right to sell or transfer this Agreement, the Credit Line and our obligations under this Agreement to any other person. Your rights under this Agreement belong to you only and may not be transferred, assumed or assigned. Your obligations, however, are binding upon your heirs and legal representatives.

**16. Notices.** Except as otherwise provided in this Agreement, notices must be in writing. Notice to any of you shall be deemed notice to all of you. Notices shall be deemed given when deposited in the U.S. Mail, postage prepaid first class mail, or when delivered in person, or sent by registered or certified mail, or by nationally recognized overnight carrier. Notice to you shall be sent to your last known address in our records for the Credit Line. Notice to us must be sent to:
WASHINGTON MUTUAL BANK
CONSUMER LENDING -- BR2CLFL
PO BOX 6868
LAKE WORTH, FL 33466
or, if a different address is stated in the Periodic Statement, to that address. Any party may change its address for receipt of notices by giving notice of the same, as set forth herein, to the other parties. You agree to notify us immediately if you change your name, address or employment or if any of you dies, is declared incompetent or is the subject of a bankruptcy or insolvency proceeding.

**17. Tax Consequences.** You should consult your own tax advisor regarding the tax deductibility of interest and charges under this Agreement.

**18. Special Terms.** In our sole discretion, we may offer you special terms on Variable Rate Advances from time to time. The special terms may include, by way of example, reduced rates, reduced fees, and reduced payments. The special terms may be available for temporary periods of time and on a limited basis.

**19. Amendment.** In addition to other changes described in this Agreement, we may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line or if the change is insignificant.

**20. Interpretation.** The names given to sections or paragraphs in this Agreement are for convenience and shall not be used to interpret this Agreement. This Agreement, the Periodic Statements and, if applicable, any payment coupons that we provide you are the best evidence of your agreement with us. If any provision of this Agreement, the Periodic Statements or any such payment coupons is found not to be valid or enforceable, such invalidity or unenforceability shall not affect the validity or enforceability of the remainder of such provision or the remaining provisions of that document, which provisions shall continue to be binding, valid and enforceable.

## VII. FIXED RATE LOAN OPTION

**1. Introduction.** If indicated in Section III above, you have the option (the "Fixed Rate Loan Option") to obtain advances from your Credit Line in the form of Fixed Rate Loans as described in this Section. Except as stated below, the Fixed Rate Loans will be subject to a fixed Daily Periodic Rate and ANNUAL PERCENTAGERATE and a fixed term.

**2. General Terms and Conditions for the Fixed Rate Loan Option.** The following shall apply to the Fixed Rate Loan Option:
(a) The Fixed Rate Loan Option may be exercised only during the Draw Period.
(b) You may exercise the Fixed Rate Loan Option to obtain up to two (2) Fixed Rate Loans on the Effective Disbursement Date which, in the aggregate, may be any amount up to the then available portion of the Credit Limit. Thereafter, you may only exercise the Fixed Rate Loan Option by converting all or any portion of (i) the outstanding Variable Rate Advances, and/or (ii) one (1) or more existing Fixed Rate Loans, into a new Fixed Rate Loan in accordance with our procedures. Following the Effective Disbursement Date, you may not obtain a Fixed Rate Loan by obtaining an advance of new funds from the Credit Line.
(c) Each Fixed Rate Loan may be for any amount, but the aggregate of all Fixed Rate Loans and outstanding Variable Rate Advances may not exceed your available Credit Limit.
(d) The portion of the Credit Limit that is available to you for Variable Rate Advances will be reduced by the amount of each Fixed Rate Loan. Any repayment of the principal amount

of a Fixed Rate Loan during the Draw Period will restore the available Credit Limit by an equal amount.
(e) You may exercise a Fixed Rate Loan Option only if no defaults exist under the terms of this Agreement or the Security Instrument, your right to obtain advances has not been terminated, suspended or cancelled and you sign all documents required by us. You may not obtain more than two (2) Fixed Rate Loans in any one (1) calendar year period and may not have more than five (5) Fixed Rate Loans outstanding at any time. You may not have outstanding at any time more than one Fixed Rate Loan that provides for an "Interest Only Minimum Payment" as described in Section VII.3(b) below. Notwithstanding any other provisions of this Section VII.2, we may convert any or all of your Fixed Rate Loans to the balance of your Variable Rate Advances in accordance with Section VI.11(c) above.
(f) You will be required to pay a Fixed Rate Loan Option Fee in the amount stated in Section IV above for each Fixed Rate Loan that you receive, except as provided in Section IV above. You may pay this fee prior to the making of the Fixed Rate Loan or it will be added to the principal balance of the Fixed Rate Loan.
(g) Except as stated below, the ANNUAL PERCENTAGE RATE that will apply to each Fixed Rate Loan will be equal to the sum of the FRLO Index stated in Section III above that is in effect on the day you exercise the Fixed Rate Loan Option to obtain that Fixed Rate Loan plus the FRLO Margin stated in Section III above. The ANNUAL PERCENTAGERATE will be reduced by the amount of any applicable discounts shown in Table C in Section III above. The total discount will be based on the number of discounts that are applicable depending on whether you qualify for a particular discount at the time the ANNUAL PERCENTAGERATE is determined. A description of these discounts is found in Section VI.5(c). If you do not qualify for a discount(s) when you exercise the Fixed Rate Loan Option, but you subsequently do so, the ANNUAL PERCENTAGE RATE for the Fixed Rate Loan will not be decreased.
If the FRLO Index, or any substitute FRLO Index, becomes unavailable, we will choose a new FRLO Index. The new FRLO Index will have a historical movement substantially similar to that of the prior FRLO Index, and the FRLO Margin will be changed so that the new FRLO Index plus the FRLO Margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the ANNUAL PERCENTAGERATE that would have been in effect at the time the prior FRLO Index becomes unavailable.
The Daily Periodic Rate for the Fixed Rate Loan will be equal to the ANNUAL PERCENTAGERATE divided by 365 (366 in a leap year). The Daily Periodic Rate and corresponding ANNUAL PERCENTAGERATE for the Fixed Rate Loan will not be greater than the maximum rates, and will not be less than the minimum rates, stated in Section III above. The periodic FINANCE CHARGE on the Fixed Rate Loan for each billing period will be a function of the outstanding principal balance of the Fixed Rate Loan each day of the billing period and the applicable Daily Periodic Rate. The outstanding principal balance of the Fixed Rate Loan for each day of the billing period is calculated by starting with the beginning principal balance that day and then subtracting any payments or credits relating to the Fixed Rate Loan received that day. The periodic FINANCE CHARGE that will apply to the Fixed Rate Loan for each billing period will be determined by first multiplying the applicable Daily Periodic Rate by the outstanding principal balance of the Fixed Rate Loan for each day of the billing period and then adding together the resulting amounts.
You will be deemed to exercise a Fixed Rate Loan Option when the FRLO Confirmation provisions in Section III above are completed and you sign this Agreement, when you sign any other required documentation at the time that you sign this Agreement, when you sign the required documentation at one of our Financial Centers, or when you call the toll-free telephone number described in Section III above and provide us with all required information.
(h) We may, at our sole discretion and without prior notice, provide a Fixed Rate Loan at a Daily Periodic Rate and corresponding ANNUAL PERCENTAGERATE that will be lower than the sum of the FRLO Index plus the FRLO Margin as described in accordance with Section VII.2(g). These lower rates are called "Promotional Rates". The Daily Periodic Rate will be equal to the ANNUAL PERCENTAGERATE divided by 365 (366 in a leap year). If you are provided with Promotional Rates, the ANNUAL PERCENTAGERATE will be reduced by the amount of any applicable discounts shown in Table C in Section III above. The total discount will be based on the number of discounts that are applicable depending on whether you qualify for a particular discount at the time the ANNUAL PERCENTAGERATE is determined. A description of these discounts is found in Section VI.5(c). If you do not qualify for a discount(s) when you exercise the Fixed Rate Loan Option, but you subsequently do so, the ANNUAL PERCENTAGERATE for the Fixed Rate Loan will not be decreased. If we provide a Fixed Rate Loan at Promotional Rates, we are not obligated to offer Promotional Rates on any subsequent Fixed Rate Loans. The amount of the Promotional Rates may change from time to time.
In addition to any Promotional Rates and discounts shown in Table C in Section III above, we may, at our sole discretion and without prior notice, offer you the option to pay a fee ("Buydown Fee") to reduce the rate further on your Fixed Rate

Loan. If we offer and you accept this buydown option, the **ANNUAL PERCENTAGE RATE** that would otherwise be applicable to the *Fixed Rate Loan* will be reduced and the Daily Periodic Rate will be equal to the reduced **ANNUAL PERCENTAGERATE** divided by 365 (366 in a leap year). The amount of the Buydown Fee that you must pay, and the amount of the reduction in the **ANNUAL PERCENTAGERATE** are stated in Section IV above. At our sole discretion, we reserve the right to charge you a lesser Buydown Fee and/or offer a greater reduction in the **ANNUAL PERCENTAGERATE** at the time you obtain a Fixed Rate Loan, and this may vary from one Fixed Rate Loan to another. A separate Buydown Fee must be paid for each Fixed Rate Loan that is subject to the buydown option. You must pay the Buydown Fee prior to the making of the Fixed Rate Loan or it will be added to the principal balance of the Fixed Rate Loan. If you prepay the Fixed Rate Loan, none of the Buydown Fee will be returned to you or credited to your Fixed Rate Loan or Credit Line. If we offer you the buydown option for a *Fixed Rate Loan*, we are not obligated to offer the buydown option for any subsequent Fixed Rate Loans. The reduction in the **ANNUAL PERCENTAGERATE** resulting from the buydown option will remain in place for the full term of the Fixed Rate Loan, but the **ANNUAL PERCENTAGERATE** may be increased as otherwise provided in this Section VII.

(i) The current Daily Periodic Rates and corresponding **ANNUAL PERCENTAGE RATES** are specified in Table C in Section III above. These rates will depend on (i) whether you have qualified for one or more discounts, (ii) whether you are being provided with Promotional Rates, or (iii) whether you have both qualified for one or more discounts and are being provided with Promotional Rates.

(j) If you have qualified for one or more discounts in the **ANNUAL PERCENTAGERATE**, but thereafter you no longer qualify, the discount(s) will be eliminated on the date that you fail to qualify. On that date, the **ANNUAL PERCENTAGERATE** of each Fixed Rate Loan will increase by the amount of the discount(s) for which you no longer qualify, and the Daily Periodic Rate will increase to the new **ANNUAL PERCENTAGE RATE** divided by 365 (366 in a leap year). For example, if you initially qualified for two discounts, but later qualify for only one discount, the increase in the **ANNUAL PERCENTAGERATE** will equal the amount by which "2 discounts" exceeds "1 discount" in Table C. However, the increased Daily Periodic Rate and **ANNUAL PERCENTAGERATE** will not be greater than the maximum rates stated in Section III above.

**3.   Choice of Terms and Minimum Payment for the Fixed Rate Loan Option.** You have the following choices regarding the term and Minimum Payment for a Fixed Rate Loan:

(a) *Amortizing Minimum Payment.* With this choice, you may determine the amortization term of each Fixed Rate Loan ("Term") at the time you exercise the Fixed Rate Loan Option. The Term shall be in increments of one (1) year. The maximum permissible Terms available for the Fixed Rate Loan are stated in Table D in Section III above and will depend upon the dollar amount of the Fixed Rate Loan. Your Minimum Payment for the Fixed Rate Loan is the amount sufficient to repay the original principal balance of the Fixed Rate Loan, together with periodic **FINANCE CHARGES** at the applicable **ANNUAL PERCENTAGERATE**, in full in substantially equal monthly installments during the Term that you will select at the time you exercise the Fixed Rate Loan Option. The entire outstanding principal balance of the Fixed Rate Loan together with all accrued and unpaid **FINANCE CHARGES** if not sooner paid, will be due and payable in full in a single payment on the earlier of the Credit Line Maturity Date or the last day of the scheduled Term. We are not obligated to refinance this amount.

(b) *Interest Only Minimum Payment.* With this choice, you must select one of the terms for the Fixed Rate Loan that is described in Table D in Section III above. You must make this selection at the time you exercise the Fixed Rate Loan Option. Your Minimum Payment will be equal to all of the unpaid periodic **FINANCE CHARGES** that have accrued on the outstanding principal balance of the Fixed Rate Loan at the applicable **ANNUAL PERCENTAGE RATE.** Your Minimum Payments will not repay any of the outstanding principal balance of the Fixed Rate Loan. At the conclusion of the term of the Fixed Rate Loan, the entire outstanding principal balance of the Fixed Rate Loan, together with all accrued and unpaid **FINANCE CHARGES** and all other fees and charges relating to the Fixed Rate Loan, automatically will be transferred to the balance of your Variable Rate Advances, which will then accrue **FINANCE CHARGES** in accordance with Section VI.5 above and be subject to all other provisions of this Agreement relating to Variable Rate Advances. If you choose to pay only the Minimum Payments, then (i) the payments on your Variable Rate Advances may increase substantially following the conclusion of the term of the Fixed Rate Loan, and (ii) the final payment due on the Maturity Date may increase substantially.

You must make your choices regarding a Fixed Rate Loan at the time you exercise the Fixed Rate Loan Option for the loan in accordance with our procedures. You may make a different choice for each Fixed Rate Loan that you obtain.

We will notify you of the amount of the Minimum Payment for

the Fixed Rate Loan. If the Fixed Rate Loan has an Amortizing Minimum Payment, your first Minimum Payment may be for a period of less than one month and, if so, we may apply the excess amount of the payment to the outstanding principal balance of the Fixed Rate Loan, which may reduce the amount of your final scheduled payment on the Fixed Rate Loan. Your Minimum Payment on each Fixed Rate Loan is in addition to the Minimum Payments that you must pay on any other Fixed Rate Loans and on the Variable Rate Advances.

**4.   Change in Minimum Payment Following Termination of Discount(s).** If you have qualified for one or more discounts in the **ANNUAL PERCENTAGERATE**, but thereafter you no longer qualify, the discount(s) will be eliminated and the **ANNUAL PERCENTAGERATE** and Daily Periodic Rate of each Fixed Rate Loan will increase in accordance with Section VII.2(j). Your Minimum Payment will also increase. Your new Minimum Payment will be determined in accordance with the applicable paragraphs of Section VII.3 above, with the exception that (a) the Minimum Payment will be calculated using the increased **ANNUAL PERCENTAGERATE** and, (b) if the Fixed Rate Loan has an Amortizing Minimum Payment, the Minimum Payment will be based on the anticipated unpaid principal balance and remaining scheduled Term of the Fixed Rate Loan. For a Fixed Rate Loan with an Amortizing Minimum Payment, the periodic **FINANCE CHARGES** the Minimum Payment, and any payment due on the earlier of the Credit Line Maturity Date or the last day of the Term will increase. For a Fixed Rate Loan with an Interest Only Minimum Payment, the periodic **FINANCE CHARGES** the Minimum Payment, the balance transferred to your Variable Rate Advances at the conclusion of the Fixed Rate Loan, the amount of the Minimum Payments due on the Variable Rate Advances, and the final payment due on the Maturity Date will increase. We will notify you of the amount of the new Minimum Payment for the Fixed Rate Loan.

**5.   Special Terms.** In our sole discretion, we may offer you special terms on Fixed Rate Loans from time to time. The special terms may include, by way of example, reduced rates, reduced fees, and reduced payments. The special terms may be available for temporary periods of time and on a limited basis.

**6.   Conflicts.** In the event of any conflict or inconsistency between the provisions of this Section VII and the remaining provisions of this Agreement, the provisions of this Section VII shall prevail. Except as otherwise provided in this Section VII, all remaining provisions of this Agreement shall apply to the Fixed Rate Loans in accordance with their terms.

**VIII.   BILLING RIGHTS**

**YOUR BILLINGS RIGHTS**
**KEEP THIS NOTICE FOR FUTURE USE**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

*Notify Us In Case of Errors or Questions About Your Bill.* If you think your bill is wrong, or if you need more information about a transaction on your bill, write us (on a separate sheet) at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your deposit account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

*Your Rights and Our Responsibilities After We Receive Your Written Notice.* We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including **FINANCE CHARGES** and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If we did not make a mistake, you may have to pay **FINANCE CHARGES** and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may

█████ 4091

report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50.00 of the questioned amount, even if your bill was correct.

*Special Rule for Credit Card Purchases.* If you have a problem with the quality of property or services that you purchased with a credit card and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or the services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.00.

These limitations do not apply if we own or operate the merchant or if we mailed you the advertisement for the property or services.

## SIGNATURES

By signing below, you agree to the terms of this Agreement and you acknowledge that you have read and received a copy of this Agreement.

█████████████████████





[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

*20121629586*

10/26/2012

Loan #: ████4091



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by ELLA MAEZONIA SIMPSON and recorded on 09/11/2007 as Instrument # 20072090903 in Book n/a, Page n/a in the office of the LOS ANGELES County Recorder, California.

Property more commonly known as: 1430 E 60TH ST, LOS ANGELES, CA 90001-1217

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on __10_/_10_/2012 (MM/DD/YYYY)
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact

By: _Jalessia F. Moore_
___Jalessia T. Moore___.
**VICE PRESIDENT**

### ACKNOWLEDGEMENT

STATE OF LOUISIANA
PARISH OF OUACHITA
On __10_/_10_/2012 (MM/DD/YYYY), before me appeared _Jalessia T. Moore_., to me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_Helen P. Tubbs_
___Helen P. Tubbs___
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

JPCAS 17874234 -7 WAMU CJ4256104  T0912102313  [C] FRMCA1_JPCAS3



*17874234*



▲ **This page is part of your document - DO NOT DISCARD** ▲



## 20121629586



**Pages:
0002**

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**10/26/12 AT 12:39PM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |

▲                                                                                        ▲



**L E A D S H E E T**



**201210260100113**

**00006652499**



**004380173**

**SEQ:
01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

▲                                                                                        ▲

E534541



**Transaction Summary**

**ELLA MAEZONIA SIMPSON**                                     Loan Number: ███

** While the transactions indicated are based on your loan's history, this is not your complete history.
It has been prepared as a courtesy to you to better understand your account, and contains selected
items to assist in that understanding.

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prii Bai |
|---|---|---|---|---|---|---|
| 08/18/07 | 08/21/07 | $78,979.95 | 32000 FUNDING | $78,979.95 | | |
| 08/18/07 | 08/21/07 | $78,979.95 | 55020 PRI ADJ | $78,979.95 | | |
| 08/18/07 | 08/21/07 | ($78,979.95) | 70899 FRLO ES | ($78,979.95) | | |
| 08/18/07 | 08/21/07 | $78,979.95 | 55020 PRI ADJ | $78,979.95 | | |
| 08/24/07 | 08/24/07 | $116.47 | 41810 INT DR | | $116.47 | |
| 08/29/07 | 08/30/07 | $2,000.00 | 69002 CHECK A | $2,000.00 | | |
| 08/30/07 | 08/30/07 | $1,800.00 | 69002 CHECK A | $1,800.00 | | |
| 09/07/07 | 09/07/07 | $775.49 | 69007CARD ADV | $775.49 | | |
| 09/09/07 | 09/10/07 | $637.45 | 69007CARD ADV | $637.45 | | |
| 09/18/07 | 09/18/07 | $4,450.00 | 69002 CHECK A | $4,450.00 | | |
| 09/18/07 | 09/18/07 | $237.07 | 69007CARD ADV | $237.07 | | |
| 09/18/07 | 09/19/07 | | 35220 RATE CH | | | |
| 09/18/07 | 09/18/07 | ($116.47) | 64810 INT PMT | $0.00 | $116.47 | |
| 09/18/07 | 09/18/07 | $399.36 | 41810 INT DR | | $399.36 | |
| 09/20/07 | 09/20/07 | $137.73 | 69007CARD ADV | $137.73 | | |
| 09/22/07 | 09/22/07 | $29.01 | 41810 INT DR | | $29.01 | |
| 09/22/07 | 09/22/07 | $83.20 | 41810 INT DR | | $83.20 | |
| 09/26/07 | 09/26/07 | $158.30 | 69007CARD ADV | $158.30 | | |
| 09/27/07 | 09/27/07 | $34.71 | 69007CARD ADV | $34.71 | | |
| 10/11/07 | 10/11/07 | $548.92 | 69007CARD ADV | $548.92 | | |

# CHASE ○

## Transaction Summary

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prin Ba |
|---|---|---|---|---|---|---|
| 10/12/07 | 10/12/07 | $6,767.92 | 69002 CHECK A | $6,767.92 | | |
| 10/12/07 | 10/12/07 | $35.08 | 69007CARD ADV | $35.08 | | ■ |
| ██████ | █0/16/07 | $162.19 | 69007CARD ADV | $162.19 | | |
| ██████ | ████████ | ($29.01) | 64810 INT PMT | $0.00 | $29.01 | |
| 10/18/07 | 10/18/07 | ($482.56) | 64810 INT PMT | $0.00 | $482.56 | |
| 10/18/07 | 10/18/07 | $415.99 | 41810 INT DR | | $415.99 | |
| 10/24/07 | 10/24/07 | $84.21 | 41810 INT DR | | $84.21 | |
| 10/24/07 | 10/24/07 | $116.48 | 41810 INT DR | | $116.48 | |
| 10/31/07 | 11/01/07 | | 35920BDRATECH | | | |
| 11/01/07 | 11/01/07 | $2,500.00 | 69002 CHECK A | $2,500.00 | | |
| 11/01/07 | 11/01/07 | ($0.12) | 42914BDDLYINT | | ($0.12) | |
| 11/18/07 | 11/19/07 | ($84.21) | 64810 INT PMT | $0.00 | $84.21 | |
| 11/18/07 | 11/19/07 | ($532.47) | 64810 INT PMT | $0.00 | $532.47 | |
| 11/18/07 | 11/19/07 | $399.37 | 41810 INT DR | | $399.37 | |
| 11/23/07 | 11/23/07 | $113.77 | 41810 INT DR | | $113.77 | |
| 11/23/07 | 11/23/07 | $99.83 | 41810 INT DR | | $99.83 | |
| 12/11/07 | 12/12/07 | | 35220 RATE CH | | | |
| 12/18/07 | 12/18/07 | ($113.77) | 64810 INT PMT | $0.00 | $113.77 | |
| 12/18/07 | 12/18/07 | ($499.20) | 64810 INT PMT | $0.00 | $499.20 | |
| 12/18/07 | 12/18/07 | $399.35 | 41810 INT DR | | $399.35 | |
| 12/24/07 | 12/24/07 | $118.24 | 41810 INT DR | | $118.24 | |
| 12/24/07 | 12/24/07 | $116.48 | 41810 INT DR | | $116.48 | |
| 01/01/08 | 01/02/08 | | 35220 RATE CH | | | |
| 01/01/08 | 01/02/08 | | 35220 RATE CH | | | |
| 01/18/08 | 01/18/08 | ($118.24) | 64810 INT PMT | $0.00 | $118.24 | |
| 01/18/08 | 01/18/08 | ($515.83) | 64810 INT PMT | $0.00 | $515.83 | |
| 01/18/08 | 01/18/08 | $398.58 | 41810 INT DR | | $398.58 | |
| 01/23/08 | 01/23/08 | | 35220 RATE CH | | | |
| 01/24/08 | 01/24/08 | $114.82 | 41810 INT DR | | $114.82 | |
| 01/24/08 | 01/24/08 | $116.17 | 41810 INT DR | | $116.17 | |

**CHASE**

**Transaction Summary**

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prin Bal |
|---|---|---|---|---|---|---|
| 01/31/08 | 01/31/08 | | 35220 RATE CH | | | |
| 02/07/08 | 02/07/08 | ($114.82) | 64810 INT PMT | $0.00 | $114.82 | ▮ |
| ▮▮▮▮ | 02/18/08 | ($514.75) | 64810 INT PMT | $0.00 | $514.75 | |
| ▮▮▮▮ | ▮▮▮▮ | $398.26 | 41810 INT DR | | $398.26 | |
| 02/22/08 | 02/22/08 | $89.72 | 41810 INT DR | | $89.72 | |
| 02/22/08 | 02/22/08 | $82.97 | 41810 INT DR | | $82.97 | |
| 03/18/08 | 03/19/08 | ($89.72) | 64810 INT PMT | $0.00 | $89.72 | |
| 03/18/08 | 03/19/08 | ($481.23) | 64810 INT PMT | $0.00 | $481.23 | |
| 03/18/08 | 03/19/08 | $398.27 | 41810 INT DR | | $398.27 | |
| 03/19/08 | 03/19/08 | | 35220 RATE CH | | | |
| 03/24/08 | 03/24/08 | $91.65 | 41810 INT DR | | $91.65 | |
| 03/24/08 | 03/24/08 | $116.16 | 41810 INT DR | | $116.16 | |
| 03/27/08 | 03/27/08 | ($89.72) | 64810 INT PMT | $0.00 | $89.72 | |
| 04/09/08 | 04/09/08 | ($1.93) | 64810 INT PMT | $0.00 | $1.93 | |
| 04/09/08 | 04/09/08 | ($89.72) | 64820 PRI PMT | $89.72 | | |
| 04/18/08 | 04/18/08 | ($514.43) | 64810 INT PMT | $0.00 | $514.43 | |
| 04/18/08 | 04/18/08 | $398.27 | 41810 INT DR | | $398.27 | |
| 04/23/08 | 04/23/08 | $78.48 | 41810 INT DR | | $78.48 | |
| 04/23/08 | 04/23/08 | $99.56 | 41810 INT DR | | $99.56 | |
| 05/01/08 | 05/02/08 | | 35220 RATE CH | | | |
| 05/18/08 | 05/19/08 | ($78.48) | 64810 INT PMT | $0.00 | $78.48 | |
| 05/18/08 | 05/19/08 | ($497.83) | 64810 INT PMT | $0.00 | $497.83 | |
| 05/18/08 | 05/19/08 | $398.27 | 41810 INT DR | | $398.27 | |
| 05/24/08 | 05/24/08 | $77.62 | 41810 INT DR | | $77.62 | |
| 05/24/08 | 05/24/08 | $116.16 | 41810 INT DR | | $116.16 | |
| 06/02/08 | 06/02/08 | $864.00 | 69005 ADVANCE | $864.00 | | |
| 06/18/08 | 06/18/08 | ($77.62) | 64810 INT PMT | $0.00 | $77.62 | |
| 06/18/08 | 06/18/08 | ($514.43) | 64810 INT PMT | $0.00 | $514.43 | |
| 06/18/08 | 06/18/08 | $398.26 | 41810 INT DR | | $398.26 | |
| 06/23/08 | 06/23/08 | $76.50 | 41810 INT DR | | $76.50 | |

**CHASE 🟠**

**Transaction Summary**

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prin Bal |
|---|---|---|---|---|---|---|
| 06/23/08 | 06/23/08 | $99.57 | 41810 INT DR | | $99.57 | |
| 07/09/08 | 07/09/08 | ($76.50) | 64810 INT PMT | $0.00 | $76.50 | ▮ |
| ▬▬▬ | ▬7/18/08 | ($497.83) | 64810 INT PMT | $0.00 | $497.83 | |
| ▬▬▬ | ▬▬▬ | $398.27 | 41810 INT DR | | $398.27 | |
| 07/24/08 | 07/24/08 | $79.94 | 41810 INT DR | | $79.94 | |
| 07/24/08 | 07/24/08 | $116.16 | 41810 INT DR | | $116.16 | |
| 08/13/08 | 08/13/08 | ($79.94) | 64810 INT PMT | $0.00 | $79.94 | |
| 08/18/08 | 08/18/08 | ($514.43) | 64810 INT PMT | $0.00 | $514.43 | |
| 08/18/08 | 08/18/08 | $398.26 | 41810 INT DR | | $398.26 | |
| 08/23/08 | 08/24/08 | $77.36 | 41810 INT DR | | $77.36 | |
| 08/23/08 | 08/24/08 | $99.57 | 41810 INT DR | | $99.57 | |
| 09/18/08 | 09/18/08 | ($77.36) | 64810 INT PMT | $0.00 | $77.36 | |
| 09/18/08 | 09/18/08 | ($497.83) | 64810 INT PMT | $0.00 | $497.83 | |
| 09/18/08 | 09/18/08 | $414.86 | 41810 INT DR | | $414.86 | |
| 09/23/08 | 09/23/08 | $79.93 | 41810 INT DR | | $79.93 | |
| 09/23/08 | 09/23/08 | $99.56 | 41810 INT DR | | $99.56 | |
| 10/09/08 | 10/09/08 | | 35220 RATE CH | | | |
| 10/18/08 | 10/18/08 | ($79.93) | 64810 INT PMT | $0.00 | $79.93 | |
| 10/18/08 | 10/18/08 | ($514.42) | 64810 INT PMT | $0.00 | $514.42 | |
| 10/18/08 | 10/18/08 | $398.27 | 41810 INT DR | | $398.27 | |
| 10/24/08 | 10/24/08 | $75.35 | 41810 INT DR | | $75.35 | |
| 10/24/08 | 10/24/08 | $116.16 | 41810 INT DR | | $116.16 | |
| 10/30/08 | 10/31/08 | | 35220 RATE CH | | | |
| 11/18/08 | 11/18/08 | ($75.35) | 64810 INT PMT | $0.00 | $75.35 | |
| 11/18/08 | 11/18/08 | ($514.43) | 64810 INT PMT | $0.00 | $514.43 | |
| 11/18/08 | 11/18/08 | $398.27 | 41810 INT DR | | $398.27 | |
| 11/22/08 | 11/22/08 | $59.56 | 41810 INT DR | | $59.56 | |
| 11/22/08 | 11/22/08 | $82.97 | 41810 INT DR | | $82.97 | |
| 12/17/08 | 12/18/08 | | 35920BDRATECH | | | |
| 12/18/08 | 12/18/08 | ($59.56) | 64810 INT PMT | $0.00 | $59.56 | |



**Transaction Summary**

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prin Bal |
|---|---|---|---|---|---|---|
| 12/18/08 | 12/18/08 | ($0.43) | 42914BDDLYINT | | ($0.43) | |
| 12/18/08 | 12/18/08 | ($481.24) | 64810 INT PMT | $0.00 | $481.24 | ■ |
| ▓▓▓▓▓ | ▓2/18/08 | $414.86 | 41810 INT DR | | $414.86 | |
| ▓▓▓▓▓ | ▓▓▓▓▓ | $60.69 | 41810 INT DR | | $60.69 | |
| 12/24/08 | 12/24/08 | $116.16 | 41810 INT DR | | $116.16 | |
| 01/01/09 | 01/02/09 | | 35220 RATE CH | | | |
| 01/01/09 | 01/02/09 | | 35220 RATE CH | | | |
| 01/18/09 | 01/19/09 | ($60.69) | 64810 INT PMT | $0.00 | $60.69 | |
| 01/18/09 | 01/19/09 | ($531.02) | 64810 INT PMT | $0.00 | $531.02 | |
| 01/18/09 | 01/19/09 | $399.05 | 41810 INT DR | | $399.05 | |
| 01/24/09 | 01/24/09 | $48.88 | 41810 INT DR | | $48.88 | |
| 01/24/09 | 01/24/09 | $116.47 | 41810 INT DR | | $116.47 | |
| 02/18/09 | 02/18/09 | ($48.88) | 64810 INT PMT | $0.00 | $48.88 | |
| 02/18/09 | 02/18/09 | ($515.52) | 64810 INT PMT | $0.00 | $515.52 | |
| 02/18/09 | 02/18/09 | $399.35 | 41810 INT DR | | $399.35 | |
| 02/21/09 | 02/21/09 | $44.18 | 41810 INT DR | | $44.18 | |
| 02/21/09 | 02/21/09 | $66.56 | 41810 INT DR | | $66.56 | |
| 03/18/09 | 03/18/09 | ($44.18) | 64810 INT PMT | $0.00 | $44.18 | |
| 03/18/09 | 03/18/09 | ($465.91) | 64810 INT PMT | $0.00 | $465.91 | |
| 03/18/09 | 03/18/09 | $399.36 | 41810 INT DR | | $399.36 | |
| 03/24/09 | 03/24/09 | $48.91 | 41810 INT DR | | $48.91 | |
| 03/24/09 | 03/24/09 | $116.47 | 41810 INT DR | | $116.47 | |
| 04/18/09 | 04/18/09 | ($48.91) | 64810 INT PMT | $0.00 | $48.91 | |
| 04/18/09 | 04/18/09 | ($515.83) | 64810 INT PMT | $0.00 | $515.83 | |
| 04/18/09 | 04/18/09 | $399.36 | 41810 INT DR | | $399.36 | |
| 04/23/09 | 04/23/09 | $47.34 | 41810 INT DR | | $47.34 | |
| 04/23/09 | 04/23/09 | $99.84 | 41810 INT DR | | $99.84 | |
| 05/18/09 | 05/18/09 | ($47.34) | 64810 INT PMT | $0.00 | $47.34 | |
| 05/18/09 | 05/18/09 | ($499.20) | 64810 INT PMT | $0.00 | $499.20 | |
| 05/18/09 | 05/18/09 | $399.35 | 41810 INT DR | | $399.35 | |

# CHASE ◖

**Transaction Summary**

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prin Bal |
|---|---|---|---|---|---|---|
| 05/23/09 | 05/23/09 | $47.34 | 41810 INT DR | | $47.34 | |
| 05/23/09 | 05/23/09 | $99.84 | 41810 INT DR | | $99.84 | ■ |
| ▓▓▓▓▓ | 06/18/09 | ($47.34) | 64810 INT PMT | $0.00 | $47.34 | |
| ▓▓▓▓▓ | ▓▓▓▓▓ | ($499.19) | 64810 INT PMT | $0.00 | $499.19 | |
| 06/18/09 | 06/18/09 | $416.00 | 41810 INT DR | | $416.00 | |
| 06/23/09 | 06/23/09 | $48.91 | 41810 INT DR | | $48.91 | |
| 06/23/09 | 06/23/09 | $99.84 | 41810 INT DR | | $99.84 | |
| 07/18/09 | 07/18/09 | ($48.91) | 64810 INT PMT | $0.00 | $48.91 | |
| 07/18/09 | 07/18/09 | ($515.84) | 64810 INT PMT | $0.00 | $515.84 | |
| 07/18/09 | 07/18/09 | $399.35 | 41810 INT DR | | $399.35 | |
| 07/24/09 | 07/24/09 | $48.92 | 41810 INT DR | | $48.92 | |
| 07/24/09 | 07/24/09 | $116.48 | 41810 INT DR | | $116.48 | |
| 08/18/09 | 08/18/09 | ($48.92) | 64810 INT PMT | $0.00 | $48.92 | |
| 08/18/09 | 08/18/09 | ($515.83) | 64810 INT PMT | $0.00 | $515.83 | |
| 08/18/09 | 08/18/09 | $399.36 | 41810 INT DR | | $399.36 | |
| 08/24/09 | 08/24/09 | $48.91 | 41810 INT DR | | $48.91 | |
| 08/24/09 | 08/24/09 | $116.48 | 41810 INT DR | | $116.48 | |
| 09/18/09 | 09/18/09 | ($48.91) | 64810 INT PMT | $0.00 | $48.91 | |
| 09/18/09 | 09/18/09 | ($515.84) | 64810 INT PMT | $0.00 | $515.84 | |
| 09/18/09 | 09/18/09 | $399.35 | 41810 INT DR | | $399.35 | |
| 09/23/09 | 09/23/09 | $47.34 | 41810 INT DR | | $47.34 | |
| 09/23/09 | 09/23/09 | $99.84 | 41810 INT DR | | $99.84 | |
| 10/18/09 | 10/19/09 | ($47.34) | 64810 INT PMT | $0.00 | $47.34 | |
| 10/18/09 | 10/19/09 | ($499.19) | 64810 INT PMT | $0.00 | $499.19 | |
| 10/18/09 | 10/19/09 | $399.37 | 41810 INT DR | | $399.37 | |
| 10/18/09 | 10/22/09 | $499.19 | 63810INTPMT R | $0.00 | $499.19 | |
| 10/22/09 | 10/22/09 | $15.00 | 45860 FEE DR | | | |
| 11/18/09 | 11/18/09 | ($564.73) | AUTO DEBIT PMT | $0.00 | $564.73 | |
| 11/18/09 | 11/20/09 | $564.73 | REG PYMT REV | $0.00 | $564.73 | |
| 12/18/09 | 12/21/09 | ($546.54) | FORCE REG PMT | | $546.54 | |

# CHASE 🔵

## Transaction Summary

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prim Bala |
|---|---|---|---|---|---|---|
| 12/18/09 | 12/21/09 | $546.54 | REG PYMT REV | $0.00 | $546.54 | |
| 12/18/09 | 12/21/09 | ($546.54) | FORCE REG PMT | | $546.54 | ▮ |
| ▮▮▮▮▮ | 12/24/09 | $546.54 | REG PYMT REV | $0.00 | $546.54 | |
| ▮▮▮▮▮ | ▮▮▮▮▮ | ($564.75) | FORCE REG PMT | | $564.75 | |
| 01/18/10 | 01/22/10 | $564.75 | REG PYMT REV | $0.00 | $564.75 | |
| 02/02/10 | 06/17/10 | $28.24 | FEE ASSESSMENT | | | |
| 02/18/10 | 02/19/10 | ($592.08) | FORCE REG PMT | | $592.08 | |
| 02/18/10 | 02/23/10 | $592.08 | REG PYMT REV | $0.00 | $592.08 | |
| 03/05/10 | 06/17/10 | $28.24 | FEE ASSESSMENT | | | |
| 03/18/10 | 03/19/10 | ($538.34) | FORCE REG PMT | | $538.34 | |
| 03/18/10 | 03/24/10 | $538.34 | REG PYMT REV | $0.00 | $538.34 | |
| 04/02/10 | 06/17/10 | $25.51 | FEE ASSESSMENT | | | |
| 04/18/10 | 04/20/10 | ($592.99) | FORCE REG PMT | | $592.99 | |
| 04/18/10 | 04/27/10 | $592.99 | REG PYMT REV | $0.00 | $592.99 | |
| 05/03/10 | 06/17/10 | $28.24 | FEE ASSESSMENT | | | |
| 05/18/10 | 05/20/10 | ($572.04) | FORCE REG PMT | | $572.04 | |
| 05/18/10 | 06/01/10 | $572.04 | REG PYMT REV | $0.00 | $572.04 | |
| 06/02/10 | 06/23/10 | $27.33 | FEE ASSESSMENT | | | |
| 06/18/10 | 06/21/10 | ($592.99) | FORCE REG PMT | | $592.99 | |
| 06/18/10 | 06/23/10 | $592.99 | REG PYMT REV | $0.00 | $592.99 | |
| 07/06/10 | 07/23/10 | $28.24 | FEE ASSESSMENT | | | |
| 07/19/10 | 07/20/10 | ($548.36) | FORCE REG PMT | | $548.36 | |
| 07/19/10 | 07/23/10 | $548.36 | REG PYMT REV | $0.00 | $548.36 | |
| 07/21/10 | 07/22/10 | ($1,096.96) | FORCE REG PMT | | $1,096.96 | |
| 08/18/10 | 08/19/10 | ($592.98) | FORCE REG PMT | | $592.98 | |
| 08/18/10 | 08/23/10 | $592.98 | REG PYMT REV | $0.00 | $592.98 | |
| 09/02/10 | 09/03/10 | ($1,083.00) | FORCE REG PMT | | $1,083.00 | |
| 09/02/10 | 09/23/10 | $28.24 | FEE ASSESSMENT | | | |
| 09/18/10 | 09/21/10 | ($564.75) | FORCE REG PMT | | $560.00 | |
| 09/18/10 | 09/21/10 | $4.75 | LT FEE PMT | | | |

# CHASE ☉
## Transaction Summary

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prin Bal |
|---|---|---|---|---|---|---|
| 09/18/10 | 09/23/10 | $564.75 | REG PYMT REV | $0.00 | $560.00 | |
| 09/18/10 | 09/23/10 | $4.75 | REV LT FEE PMT | | | |
| ██████ | 0/05/10 | ($1,163.00) | FORCE REG PMT | | $1,107.43 | |
| ██████ | ██████ | $55.57 | LT FEE PMT | | | |
| 10/18/10 | 10/19/10 | ($574.78) | FORCE REG PMT | | $548.36 | |
| 10/18/10 | 10/19/10 | $26.42 | LT FEE PMT | | | |
| 10/18/10 | 10/21/10 | $574.78 | REG PYMT REV | $0.00 | $548.36 | |
| 10/18/10 | 10/21/10 | $26.42 | REV LT FEE PMT | | | |
| 10/25/10 | 10/25/10 | | RTE ADJ DEF ADD | | | |
| 10/25/10 | 10/25/10 | | RATE CHANGE | | | |
| 11/02/10 | 11/08/10 | $27.33 | FEE ASSESSMENT | | | |
| 11/05/10 | 11/05/10 | $20.00 | FEE ASSESSMENT | | | |
| 11/05/10 | 11/08/10 | ($20.00) | FEE PAYMENT | | | |
| 11/05/10 | 11/08/10 | ($1,090.00) | REGULAR  PAYMENT | $0.00 | $1,063.58 | |
| 11/05/10 | 11/08/10 | $26.42 | LT FEE PMT | | | |
| 12/03/10 | 12/03/10 | $28.82 | FEE ASSESSMENT | | | |
| 01/03/11 | 01/03/11 | $28.06 | FEE ASSESSMENT | | | |
| 02/02/11 | 02/02/11 | $28.46 | FEE ASSESSMENT | | | |
| 03/07/11 | 03/07/11 | $28.46 | FEE ASSESSMENT | | | |
| 04/04/11 | 04/20/11 | $25.71 | FEE ASSESSMENT | | | |
| 04/19/11 | 04/20/11 | ($2,945.00) | FORCE REG PMT | | $2,858.46 | |
| 04/19/11 | 04/20/11 | $86.54 | LT FEE PMT | | | |
| 06/02/11 | 07/05/11 | $31.87 | FEE ASSESSMENT | | | |
| 07/05/11 | 07/05/11 | $28.46 | FEE ASSESSMENT | | | |
| 08/02/11 | 08/05/11 | $27.54 | FEE ASSESSMENT | | | |
| 08/04/11 | 08/05/11 | ($1,200.00) | FORCE REG PMT | | $1,147.16 | |
| 08/04/11 | 08/05/11 | $52.84 | LT FEE PMT | | | |
| 09/02/11 | 09/06/11 | $28.46 | FEE ASSESSMENT | | | |
| 09/03/11 | 09/06/11 | ($1,200.00) | REGULAR  PAYMENT | $0.00 | $1,143.12 | |
| 09/03/11 | 09/06/11 | $56.88 | LT FEE PMT | | | |

# CHASE ⬡

## Transaction Summary

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | Prir Ba |
|---|---|---|---|---|---|---|
| 10/03/11 | 10/03/11 | $31.10 | FEE ASSESSMENT | | | |
| 10/07/11 | 10/07/11 | ($1,200.00) | REGULAR PAYMENT | $0.00 | $1,143.08 | ▌ |
| ████ | ▌0/07/11 | $56.92 | LT FEE PMT | | | |
| ████ | ████ | $30.39 | FEE ASSESSMENT | | | |
| 11/23/11 | 11/23/11 | ($1,200.00) | REGULAR PAYMENT | $0.00 | $1,174.29 | |
| 11/23/11 | 11/23/11 | $25.71 | LT FEE PMT | | | |
| 12/31/11 | 01/03/12 | ($1,200.00) | REGULAR PAYMENT | $0.00 | $1,139.67 | |
| 12/31/11 | 01/03/12 | $60.33 | LT FEE PMT | | | |
| 02/02/12 | 02/02/12 | $28.46 | FEE ASSESSMENT | | | |
| 03/05/12 | 03/05/12 | $31.42 | FEE ASSESSMENT | | | |
| 03/27/12 | 03/27/12 | ($2,400.00) | REGULAR PAYMENT | $0.00 | $2,282.51 | |
| 03/27/12 | 03/27/12 | $117.49 | LT FEE PMT | | | |
| 04/02/12 | 04/02/12 | ($1,455.17) | REGULAR PAYMENT | $0.00 | $1,426.71 | |
| 04/02/12 | 04/02/12 | $28.46 | LT FEE PMT | | | |
| 05/03/12 | 05/03/12 | $28.38 | FEE ASSESSMENT | | | |
| 06/04/12 | 08/21/12 | $33.34 | FEE ASSESSMENT | | | |
| 06/19/12 | 08/21/12 | | TAKEDOWN UPDT | | | |
| 07/03/12 | 09/11/12 | $28.38 | FEE ASSESSMENT | | | |
| 07/31/12 | 07/31/12 | ($1,200.00) | REGULAR PAYMENT | $0.00 | $1,200.00 | |
| 08/19/12 | 09/11/12 | ($78,979.95) | DECR PRI BAL | ($78,979.95) | | |
| 08/19/12 | 09/11/12 | $78,979.95 | INCR BAL ADJ | $78,979.95 | | |
| 09/04/12 | 09/11/12 | $28.38 | FEE ASSESSMENT | | | |
| 09/11/12 | 09/11/12 | | USER MEMO 4 UPD | | | |
| 06/03/13 | 07/12/13 | $15.00 | FEE ASSESSMENT | | | |
| 06/17/13 | 06/17/13 | ($3,692.18) | REGULAR PAYMENT | $0.00 | $3,692.18 | |
| 07/03/13 | 07/12/13 | $15.00 | FEE ASSESSMENT | | | |
| 07/17/13 | 07/17/13 | ($809.01) | REGULAR PAYMENT | $0.00 | $644.11 | |
| 07/17/13 | 07/17/13 | $164.90 | LT FEE PMT | | | |
| 09/03/13 | 09/03/13 | $23.70 | FEE ASSESSMENT | | | |
| 10/01/13 | 10/01/13 | ($1,025.00) | REGULAR PAYMENT | $0.00 | $986.30 | |

# CHASE ⦿

## Transaction Summary

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | PrPr B:B: |
|---|---|---|---|---|---|---|
| 10/01/13 | 10/01/13 | $38.70 | LT FEE PMT | | | |
| 11/27/13 | 11/27/13 | ($1,200.00) | REGULAR PAYMENT | $688.44 | $511.56 | I I |
| ▮▮▮▮▮ | 1/27/13 | $688.44 | INCR UNCOLLECT | | | |
| ▮▮▮▮▮ | ▮▮▮▮▮ | $688.44 | DECR UNCOLLECT | | | |
| 01/08/14 | 01/08/14 | ($1,200.00) | REGULAR PAYMENT | $858.31 | $341.69 | |
| 01/08/14 | 01/08/14 | $858.31 | INCR UNCOLLECT | | | |
| 01/16/14 | 01/16/14 | $858.31 | DECR UNCOLLECT | | | |
| 03/05/14 | 03/05/14 | $15.00 | FEE ASSESSMENT | | | |
| 04/02/14 | 04/02/14 | $15.00 | FEE ASSESSMENT | | | |
| 04/30/14 | 04/30/14 | ($884.89) | REGULAR PAYMENT | $0.00 | $854.89 | |
| 04/30/14 | 04/30/14 | $30.00 | LT FEE PMT | | | |
| 06/02/14 | 06/02/14 | ($884.89) | REGULAR PAYMENT | $570.36 | $314.53 | |
| 06/02/14 | 06/02/14 | $570.36 | INCR UNCOLLECT | | | |
| 06/10/14 | 06/10/14 | $570.36 | DECR UNCOLLECT | | | |
| 07/30/14 | 07/30/14 | ($884.89) | REGULAR PAYMENT | $419.83 | $465.06 | |
| 07/30/14 | 07/30/14 | $419.83 | INCR UNCOLLECT | | | |
| 08/07/14 | 09/15/14 | $419.83 | DECR UNCOLLECT | | | |
| 09/02/14 | 09/02/14 | ($884.89) | REGULAR PAYMENT | $677.31 | $207.58 | |
| 09/02/14 | 09/15/14 | $677.31 | INCR UNCOLLECT | | | |
| 09/10/14 | 09/15/14 | $677.31 | DECR UNCOLLECT | | | |
| 09/25/14 | 09/25/14 | ($884.89) | REGULAR PAYMENT | $646.59 | $238.30 | |
| 09/25/14 | 09/25/14 | $646.59 | INCR UNCOLLECT | | | |
| 10/03/14 | 10/03/14 | $646.59 | DECR UNCOLLECT | | | |
| 11/28/14 | 11/28/14 | ($476.60) | REGULAR PAYMENT | $0.00 | $476.60 | |
| 02/02/15 | 02/02/15 | $15.00 | FEE ASSESSMENT | | | |
| 02/19/15 | 02/19/15 | ($510.98) | REGULAR PAYMENT | $18.85 | $492.13 | |
| 02/19/15 | 02/19/15 | $18.85 | INCR UNCOLLECT | | | |
| 02/27/15 | 02/27/15 | $18.85 | DECR UNCOLLECT | | | |
| 03/30/15 | 03/30/15 | ($235.51) | REGULAR PAYMENT | $0.00 | $235.51 | |
| 05/04/15 | 05/19/15 | $15.00 | FEE ASSESSMENT | | | |



**Transaction Summary**

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | PrPr B:B |
|---|---|---|---|---|---|---|
| 05/18/15 | 05/19/15 | ($259.09) | REGULAR PAYMENT | $0.00 | $259.09 | |
| 06/02/15 | 06/23/15 | $15.00 | FEE ASSESSMENT | | | |
| ~~06/22/15~~ | ~~06/23/15~~ | ($480.31) | REGULAR PAYMENT | $0.00 | $450.31 | |
| ~~06/22/15~~ | ~~06/23/15~~ | $30.00 | LT FEE PMT | | | |
| 08/03/15 | 08/03/15 | $15.00 | FEE ASSESSMENT | | | |
| 08/14/15 | 08/14/15 | ($495.30) | REGULAR PAYMENT | $0.00 | $480.30 | |
| 08/14/15 | 08/14/15 | $15.00 | LT FEE PMT | | | |
| 09/17/15 | 09/17/15 | ($259.09) | REGULAR PAYMENT | $0.00 | $244.09 | |
| 09/17/15 | 09/17/15 | $15.00 | LT FEE PMT | | | |
| 10/23/15 | 10/23/15 | ($271.24) | REGULAR PAYMENT | $35.02 | $236.22 | |
| 10/23/15 | 10/23/15 | $35.02 | INCR UNCOLLECT | | | |
| 10/31/15 | 10/30/15 | $35.02 | DECR UNCOLLECT | | | |
| 11/03/15 | 11/03/15 | | ES BILL ADD | | | |
| 11/03/15 | 11/03/15 | $9,180.47 | ESC DISB TAX | | | |
| 12/03/15 | 12/21/15 | $15.00 | FEE ASSESSMENT | | | |
| 12/17/15 | 12/21/15 | | RATE CHANGE | | | |
| 12/20/15 | 12/21/15 | ($500.00) | REGULAR PAYMENT | $19.78 | $480.22 | |
| 12/20/15 | 12/21/15 | $19.78 | INCR UNCOLLECT | | | |
| 12/28/15 | 12/28/15 | $19.78 | DECR UNCOLLECT | | | |
| 02/02/16 | 02/02/16 | $15.00 | FEE ASSESSMENT | | | |
| 03/04/16 | 03/04/16 | $15.00 | FEE ASSESSMENT | | | |
| 03/10/16 | 03/10/16 | ($791.83) | REGULAR PAYMENT | $2.17 | $759.66 | |
| 03/10/16 | 03/10/16 | $30.00 | LT FEE PMT | | | |
| 03/10/16 | 03/10/16 | $2.17 | INCR UNCOLLECT | | | |
| 03/18/16 | 03/18/16 | $2.17 | DECR UNCOLLECT | | | |
| 05/03/16 | 05/03/16 | $15.00 | FEE ASSESSMENT | | | |
| 06/02/16 | 06/02/16 | $15.00 | FEE ASSESSMENT | | | |
| 07/05/16 | 07/05/16 | ($300.12) | REGULAR PAYMENT | $0.00 | $300.12 | |
| 08/02/16 | 01/04/17 | $15.00 | FEE ASSESSMENT | | | |
| 08/09/16 | 08/10/16 | ($1,045.98) | REGULAR PAYMENT | $0.00 | $1,000.98 | |

# CHASE

**Transaction Summary**

| Effective Date | Post Date | Transaction Amount | Transaction Description | Principal Amount | Interest Amount | PrPr B B |
|---|---|---|---|---|---|---|
| 08/09/16 | 08/10/16 | $45.00 | LT FEE PMT | | | |
| 10/03/16 | 01/04/17 | $15.00 | FEE ASSESSMENT | | | |
| ▉▉▉▉▉ | 11/02/16 | ($520.00) | REGULAR PAYMENT | $0.00 | $520.00 | |
| ▉▉▉▉▉ | ▉▉▉▉▉ | ($15.00) | DECR FEE ASSD | | | |
| 11/17/16 | 11/17/16 | $15.00 | FEE ASSESSMENT | | | |
| 11/17/16 | 01/04/17 | ($15.00) | FEE ASSESS REV | | | |
| 12/05/16 | 01/04/17 | $15.00 | FEE ASSESSMENT | | | |
| 12/15/16 | 01/04/17 | | RATE CHANGE | | | |
| 01/03/17 | 01/04/17 | $15.00 | FEE ASSESSMENT | | | |
| 02/02/17 | 02/02/17 | $15.00 | FEE ASSESSMENT | | | |
| 03/03/17 | 03/08/17 | ($514.36) | REGULAR PAYMENT | $0.00 | $514.36 | |
| 03/17/17 | 03/17/17 | | RATE CHANGE | | | |
| 04/03/17 | 04/03/17 | $15.00 | FEE ASSESSMENT | | | |
| 05/03/17 | 05/03/17 | $15.00 | FEE ASSESSMENT | | | |
| 05/08/17 | 05/08/17 | ($1,000.00) | REGULAR PAYMENT | $0.00 | $1,000.00 | |
| | 09/25/18 | ($105.00) | LATE CHARGE WAIVED | | | |

# EXHIBIT C

Chase
P.O. Box 469030
Glendale, CO 80246-9030

**CHASE ○**

December 12, 2018

Estate Of The Ella Maezonia Simpson and Theresa M. Key

█████████████

**We can't complete your loan assumption and modification request**

Account:                    ******4091
Property Address:           ████████████████

Dear The Estate of Ella Maezonia Simpson and Theresa M. Key:

We received your request for a loan assumption and modification, and after completing a review of the information you sent us, we've determined that you're not eligible for this program because:

- We didn't receive all of the documents we needed within the required time frame.

If you don't agree with the decision not to approve the assumption and modification you requested, you can send us your reasons in writing. We'll confirm within five business days that we received your dispute.

Please write your name and the account number you're writing about on each page of the information you send:

|  |  |
|---|---|
| Fax (preferred method): | 1-866-256-5143 (Free of charge from any Chase branch) |
| Mail: | Chase<br>Mail Code LA4-5555<br>700 Kansas Lane<br>Monroe, LA 71203-4774 |
| Email: | chase.nonapproval.disputes@chase.com |

**We're here to help**

As the Relationship Manager assigned to this request, I can work with you to try to find mortgage assistance options to help avoid foreclosure on the property, so call me right away.

If you're still interested in being reviewed for assistance options that may be available, you can reapply. But we can't begin to determine if you're eligible until we receive new copies of all of the documents we need from you. Please send complete and accurate documents right away or you won't be considered for an assumption and modification and the home may be at risk of foreclosure sale.

If you have any questions, please call us at one of the numbers below Monday through Friday from 8 a.m. to 10 p.m. Eastern Time.

Stacy Stevenson
Relationship Manager
Chase
1-877-496-3138 ext. 3483004 Direct number
1-866-550-5705 General number
1-800-582-0542 TTY
1-866-282-5682 Fax (Free of charge from any Chase branch)

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-866-550-5705, de lunes a viernes de 8 a.m. a 10 p.m., hora del Este.

## Important Legal Information

This letter is for informational purposes only and is not an attempt to collect a debt from an individual in bankruptcy.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

**Information for Servicemembers and their dependents**
If you or any occupant of your home are or recently were on active Military duty or related active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA), state law, or Chase policy. This includes protection from foreclosure or eviction, and in some cases, interest rate benefits. Some protections also may be available if you are the dependent of an eligible Servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, California law allows for a six-month deferral if certain conditions are met.

For more information, please call Chase Military Services at 1-877-469-0110.

**Federal ECOA Notice**
The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Consumer Financial Protection Bureau, 1700 G Street N.W., Washington, DC 20552.

**Here's where to look for more help**
You can call or visit the website of the U.S. Department of Housing and Urban Development or U.S. Department of the Treasury-sponsored HOPE Hotline Number to get free assistance from a Housing and Urban Development approved nonprofit counselor or in understanding this letter.

U.S. Department of Housing and Urban Development
Telephone Number:     1-800-569-4287
Website:                      hud.gov/offices/hsg/sfh/hcc/fc/

HOPE NOW
Telephone Number:     1-888-995-HOPE (1-888-995-4673)
Website:                      HopeNow.com

CR46236-M
LM200

Chase
P.O. Box 469030
Glendale, CO 80246-9030

**CHASE**

November 07, 2018

Theresa Key
1430 E 60th Street
Los Angeles, CA 90001

**Send us information by December 7, 2018, to be considered for a mortgage loan assumption and modification**

Account:            ******4091
Property Address:    ███████████████

Dear Theresa Key:

We received your request to participate in our mortgage loan assumption and modification program, but we need some more information from you before we can review your request.

**If you're still interested in participating in this program, please send us all of the information below by December 7, 2018.** If we don't receive your information by this date, we'll cancel your request. Please note that this deadline supersedes any deadlines for submitting information related to mortgage assistance options listed in any previous letters we've sent to the customer.

- Occupancy Validation Affidavit completed, signed and dated. Please make sure the enclosed copy of the affidavit is fully completed and signed. This form will be used for the loan assumption and modification program.

- A fully completed, signed and dated Credit Authorization Release form, which is enclosed. Please make sure you complete and sign the enclosed copy. This version is specifically for our loan assumption and modification program.

- A copy of your most recent quarterly or year-to-date profit and loss statement, signed and dated, showing revenue, expenses, company name, and period of time covered.

- A copy of a statement or letter from all providers of benefit income such as Social Security, disability, death benefits, pension or public assistance, or unemployment benefit income; proof of monthly insurance benefits or government assistance (if applicable) or letter from the provider with the amount, frequency and duration of the benefit. This statement or letter should include the amount, frequency and duration of the income. Please also provide two most recent bank statements showing receipt of payment; send all statement pages, even if a page is blank.

- A copy of the homeowners insurance policy or declarations page showing proof of homeowners insurance for the subject property. The proof of the insurance must meet the following requirements:

  • An active policy that lists the annual premium amount is required. We won't accept insurance quotes or binders.

  • The policy must be in the name of the applicant only.

- The amount of dwelling coverage must be at least equal to the balance of the loan, or the policy must specify that it provides 100% Replacement Cost. If the property is a condominium, the master policy is required with "walls-in" coverage or an HO6 policy.

- Coverage must be provided for a term of one year, and the policy must have at least 60 days remaining before the coverage ending date.

- The policy must reflect the Chase loan number found on the first page of this letter and the following Mortgagee clause:

  JPMorgan Chase Bank, N.A.
  Its successors and/or assigns
  P.O. Box 100564
  Florence, SC 29502-0564

You can send us copies of the paper bank statements you receive each month or printed copies of online bank statements. Include all pages of bank statements, even if a page is blank. **We will not accept copies of paper or online transaction histories or account information printed from an ATM.**

Please send the Government Monitoring Data form which is used for government monitoring purposes; this form is enclosed.

**Please return your documents by December 7, 2018.** If we don't receive your information by this date, your request may be canceled.

**Your Request for mortgage assistance may not stop the foreclosure process.** While we wait for you to send us the requested information by the due date listed in this letter, we won't refer your loan to foreclosure and a foreclosure sale will not occur unless we're unable to prevent or cancel any pending foreclosure action. Do not ignore any notices you receive.

You may need to respond to foreclosure notices or complete other actions to protect your rights under applicable foreclosure law. If you have questions about the legal consequences of a foreclosure sale of the property, we suggest you contact an attorney or a housing counselor for assistance.

If you have questions, please call us at one of the numbers below Monday through Friday from 8 a.m. to 10 p.m. Eastern Time.

Sincerely,

Stacy Stevenson
Relationship Manager
Chase
1-877-496-3138
1-800-582-0542 TTY
1-866-282-5682 Fax; it's free from any Chase branch

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-877-496-3138, de lunes a viernes de 8 a.m. a 10 p.m., hora del Este.

Enclosures

### Important Legal Information

This letter is for informational purposes only and is not an attempt to collect a debt from an individual in bankruptcy.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

Chase (Mail Code OH4-7302)
P.O. Box 183222
Columbus, OH 43218-3222



August 21, 2018

Estate Of Ella Maezonia Simpson

███████████████

**Here are guides to help you update mortgage information**

Account:                 ******4091
Property Address:

Dear Estate Of Ella Maezonia Simpson:

We're very sorry to hear about the death of Ella Maezonia Simpson. We know this may be a difficult time for you, and we're here to help in any way we can.

We've enclosed guides that explain how to update the information on this mortgage loan. Please use the guide that fits your situation and follow the instructions, which explain what you should send us.

Please send these forms and any required documents listed in the guide to:

Fax:                1-614-422-2501

Regular mail:       Chase
                    Attn: Name Change Correspondence
                    P.O. Box 24696
                    Columbus, OH 43224-0696

Overnight mail:     Chase
                    Attn: Name Change Correspondence
                    Mail Code OH4-7302
                    3415 Vision Drive
                    Columbus, OH 43219-6009

When we receive the documents, we'll review your request and contact you if we have any questions.

If you'd like to change who is financially responsible for the mortgage, you'll need to apply for a loan assumption. Please call us at one of the numbers below to see if an assumption is an option for this type of loan and to request an Assumption Application Package. You can also call us if you have other questions.

Sincerely,

Chase
1-800-848-9136
1-800-582-0542 TTY
1-614-422-2501 Fax, free from any Chase branch

Enclosed:
- Updating Mortgage Information Following a Death guide: adding an appointed administrator to a deceased borrower's estate
- Updating Mortgage Information Following a Death guide: adding a successor trustee authorized to receive loan information following the death of a borrower

## Important Legal Information

**We are a debt collector**
This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, to the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. Any payment you make on the account is voluntary, but we may still have rights under the security instrument, including the right to foreclose on the property.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

CR006137
CC030

Chase (Mail Code OH4-7302)
P.O. Box 183222
Columbus, OH 43218-3222

**CHASE** 🅞

October 19, 2018

Estate Of Ella Maezonia Simpson

███████████████

**We have updated our customer's home equity account information**

Account:              ******4091
Property Address:     ████████████

Dear Estate Of Ella Maezonia Simpson:

Thank you for letting us know that Ella Maezonia Simpson has passed away. We are sorry for your loss and want to help you with the next steps for this account.

As you requested, we authorized Theresa M Key to receive information about the account without being responsible for repaying the loan. When we add an authorized person to the account, the original customer is not released from their obligations under the terms of the loan.

Now, we need to confirm that this property is covered by homeowners insurance by 11/18/2018.

You or your insurance agent can send a copy of your policy declarations page showing the new name for this account to:

Fax:            1-678-475-8799; it's free from any Chase branch

Mail:           Chase
                P.O. Box 100564
                Florence, SC 29502-0564

If you have questions, please call us or visit chase.com/EstateServices. We're here to help you.

Sincerely,

Customer Support Team
1-800-836-5656
1-800-582-0542 TTY
1-678-475-8799 Fax; (it's free from any Chase branch)
chase.com

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198.

**Important Legal Information**

Enclosed:
- Updating Mortgage Information Following a Death guide: adding an appointed administrator to a deceased borrower's estate
- Updating Mortgage Information Following a Death guide: adding a successor trustee authorized to receive loan information following the death of a borrower

### Important Legal Information

**We are a debt collector**
This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, to the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. Any payment you make on the account is voluntary, but we may still have rights under the security instrument, including the right to foreclose on the property.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

CR006137
CC030

)

Chase (Mail Code OH4-7302)
P.O. Box 183222
Columbus, OH 43218-3222

**CHASE** 🏦

August 21, 2018

Estate Of Ella Maezonia Simpson

███████████████

**We have updated our customer's home equity account information**

Account:                    ******4091
Property Address:

Dear Estate Of Ella Maezonia Simpson:

Thank you for letting us know that Ella Maezonia Simpson has passed away. We are sorry for your loss and want to help you with the next steps for this account.

As you requested, we authorized Theresa Key to receive payoff and payment information only without being responsible for repaying the loan. When we add an authorized person to the account, the original customer is not released from their obligations under the terms of the loan.

Now, we need to confirm that this property is covered by homeowners insurance by 9/20/2018.

You or your insurance agent can send a copy of your policy declarations page showing the new name for this account to:

Fax:          1-678-475-8799; it's free from any Chase branch

Mail:         Chase
              P.O. Box 100564
              Florence, SC 29502-0564

If you have questions, please call us or visit chase.com/EstateServices. We're here to help you.

Sincerely,

Customer Support Team
1-800-836-5656
1-800-582-0542 TTY
1-678-475-8799 Fax; (it's free from any Chase branch)
chase.com

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198.

**Important Legal Information**

This communication is an attempt to collect a debt and any information obtained will be used for that purpose. However, to the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. Any payment you make on the account is voluntary, but we may still have rights under the security instrument, including the right to foreclose on the property.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

CR16754
AS009

**Chase**
7301 Baymeadows Way
Jacksonville, FL 32256-6826

**CHASE O**

November 27, 2018

Ella Maezonia Simpson



**We've rescheduled the foreclosure sale for your property**

Account:              ******4091
Property Address:

Dear Ella Maezonia Simpson:

We're writing to let you know that we've rescheduled the foreclosure sale for the property above to January 9, 2019.

If you have any questions, please call us at one of the numbers below.

Sincerely,

Stacy Stevenson
Chase
1-877-496-3138 ext. 3483004
1-866-550-5705
1-800-582-0542 TTY
www.chase.com

**Important legal information**

**This communication is an attempt to collect a debt and any information obtained will be used for that purpose.**

**If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.**

**However, to the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code ("the Bankruptcy Code"), this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. Any payment you make on the account is voluntary, but we still have rights under the security instrument, including the right to foreclose on the property.**

The California Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after

Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (1-877-382-4357) or www.ftc.gov.

**Important Notice To Servicemembers And Their Dependents**
If you or any occupants of your home are or recently were on active duty or active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA). This includes protection from foreclosure or eviction. You may also be eligible for benefits and protections under state law or Chase policy. SCRA and state military benefits and protections also may be available if you are the dependent of an eligible servicemember. Although Servicemember interest rate benefits under the Servicemember's Civil Relief Act don't allow you to defer payments, California law allows for a six-month deferral if certain conditions are met.

Eligible service may include:

- Active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard, or
- Active service as a commissioned officer of the National Oceanic and Atmospheric Administration, or
- Active service as a commissioned officer of the Public Health Service, or
- Service with the forces of a nation with which the United States is allied in a war or military action, or
- Service with the National Guard or a state militia under a state call of duty, or
- Any period when you are absent from duty because of sickness, wounds, leave, or other lawful cause.

For more information, please call Chase Military Services at 1-877-469-0110.

CR42052
FC016

Chase (Mail Code OH4-7302)
P.O. Box 183222
Columbus, OH 43218-3222

**CHASE** ◉

October 24, 2018

Estate Of Ella Maezonia Simpson
c/o Theresa Key
███████████████

**Here is important information about the mortgage loan that your client is responsible for**

Customer Name(s):   Ella Maezonia Simpson
Account:                   ******4091
Property Address:    ████████████████████

Dear Estate of Ella Maezonia Simpson:

Thank you for contacting us on October 22, 2018, about your client's account. We've included details about the loan that may be helpful to you.

**Here are details about the origination of the loan**
- The loan was originated on August 18, 2007.
- This loan is a valid and legally enforceable financial obligation.

We've enclosed copies of the Note and Security Instrument that were signed at the loan closing. We've also enclosed copies of the following documents:

Transactional History
Assignment of Mortgage

Any information or document you requested that isn't included with this letter is either irrelevant, unavailable, considered proprietary, overbroad or unduly burdensome.

**Here is the status of the loan as of October 24, 2018**

| | |
|---|---|
| Unpaid Principal Balance | $96,062.43 |
| Accrued Interest from 4/18/2017 to 10/24/2018 | $6,580.61 |
| Escrow Advances | $0.00 |
| Other Fees and Advances | $11,039.43 |
| Subtotal | $113,682.47 |
| Unapplied funds | ($0.00) |
| Total | $113,682.47 |

- The information above is not a payoff quote. Please contact us if you would like a payoff quote for your loan.
- **If you believe these amounts are incorrect, please send us a written response by**

|  | Mail: | Chase |
|---|---|---|
|  |  | Mail Code OH4-7302 |
|  |  | 3415 Vision Drive |
|  |  | Columbus, OH 43219-6009 |
|  | Fax: | 1-614-422-7575; it's free from any Chase branch |

**Here is an update on the information you requested from us**

Your account is not a "Mortgage Electronic Registration System" (MERS)" loan.

The owner for this loan is JPMorgan Chase Bank, N.A. , 3415 Vision Drive, Columbus, OH 43219. The ownership of your account may change from time to time during the account term, but this is the current owner.

Information about accounting and servicing systems is confidential and can't be provided.

Some of the information about debits and credits is confidential or unavailable and can't be provided.

**We've included information to assist you with your additional questions**

- The Security Instrument details information about the applicability or nature of attorney fees, or our ability to assess and collect attorney fees.
- Be assured that we haven't charged interest on any attorney fees assessed to this account. We don't charge interest on any type of fees.
- Some of the information requested is either confidential or unavailable and can't be provided.
- For information about the suspense/unapplied accounts, see the enclosed Loan Transaction History.
- The Loan Transaction History details information about the late fees assessed to the account.
- The copy of the Note and/or Security Instrument details information about the applicability or nature of late charges, or our ability to assess and collect late charges.
- The Loan Transaction History includes a history of inspection fees assessed to the account.
- Questions about the applicability or nature of property inspection fees and our ability to complete them are detailed in the enclosed Security Instrument.
- The enclosed Loan Transaction History indicates fees assessed or collected related to Broker Price Opinions (BPOs).
- See the enclosed copy of your Security Instrument for any questions about the nature and applicability of Broker Price Opinion fees, our ability to obtain a BPO on the property, and our right to assess and collect BPO fees.

**Here's information about the lender-placed insurance**

- We haven't purchased lender-placed insurance for this loan.

If you have questions, please call us.

Sincerely,

Steve Brooks
Executive Director
Chase
1-800-836-5656
1-800-582-0542 TTY
1-614-422-7575 Fax; it's free from any Chase branch
chase.com

Chase (Mail Code OH4-7302)
P.O. Box 183222
Columbus, OH 43218-3222

**CHASE** ◯

December 04, 2018

Ella Maezonia Simpson

████████████ ████

**Here is important information about this account**

Account:            ******4091
Property Address:   1430 E 60th Street
                    Los Angeles, CA 90001-0000

Dear Ella Maezonia Simpson:

Thank you for contacting us on November 30, 2018, about your account. We've included details about the loan that may be helpful to you.

**Here are details about the origination of the loan**
- The loan was originated on August 18, 2007.
- This loan is a valid and legally enforceable financial obligation.

We've enclosed copies of the following documents:

- Note
- Security Instrument
- Loan Transaction History
- Assignment

Any information or document you requested that isn't included with this letter is either irrelevant, unavailable, considered proprietary, overbroad or unduly burdensome.

**Here is the status of the loan as of December 4, 2018**

| Unpaid Principal Balance | $96,062.43 |
|---|---|
| Accrued Interest from 4/18/2017 to 12/4/2018 | $7,119.05 |
| Escrow Advances | $0.00 |
| Other Fees and Advances | $11,089.43 |
| Subtotal | $114,270.91 |
| Unapplied funds | ($0.00) |
| Total | $114,270.91 |

- The information above is not a payoff quote. Please contact us if you would like a payoff quote for your loan.
- **If you believe these amounts are incorrect, please send us a written response by January**

Enclosure(s)

Esta comunicación contiene información importante acerca de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, comuníquese con nosotros llamando al 1-855-280-4198.

## Important Legal Information

### We are a debt collector

This is an attempt to collect a debt and any information obtained will be used for that purpose. However, to the extent your original obligation was discharged or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. Any payment you make on the account is voluntary, but we may still have rights under the security instrument, including the right to foreclose on the property.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

### Principal balance cancellation may affect your credit

Chase cannot determine what impact balance cancellation will have on your credit rating. It may have a negative impact. Credit reporting agencies that determine credit ratings will receive notice that your account was paid in full for less than the full balance.

The California Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (1-877-382-4357) or www.ftc.gov.

CR22974
DA008

**Chase**
7301 Baymeadows Way
Jacksonville, FL 32256-6826



January 04, 2019

Ella Maezonia Simpson
1434 E 60th Street
Los Angeles, CA 90001-1217

**We've rescheduled the foreclosure sale for your property**

Account:          ******4091
Property Address:

Dear Ella Maezonia Simpson:

We're writing to let you know that we've rescheduled the foreclosure sale for the property above to February 13, 2019.

If you have any questions, please call us at one of the numbers below.

Sincerely,

Stacy Stevenson
Chase
1-877-496-3138 ext. 3483004
1-866-550-5705
1-800-582-0542 TTY
www.chase.com

### Important legal information

**This communication is an attempt to collect a debt and any information obtained will be used for that purpose.**

**If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.**

**However, to the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code ("the Bankruptcy Code"), this notice is for compliance with non-bankruptcy law and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. Nothing in this letter (including our use of the words "your," "loan," "mortgage," or "account") means that you're required to repay a debt that's been discharged. Any payment you make on the account is voluntary, but we still have rights under the security instrument, including the right to foreclose on the property.**

The California Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after

Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP (1-877-382-4357) or www.ftc.gov.

**Important Notice To Servicemembers And Their Dependents**
If you or any occupants of your home are or recently were on active duty or active service, you may be eligible for benefits and protections under the federal Servicemembers Civil Relief Act (SCRA). This includes protection from foreclosure or eviction. You may also be eligible for benefits and protections under state law or Chase policy. SCRA and state military benefits and protections also may be available if you are the dependent of an eligible servicemember. Although Servicemember interest rate benefits under the Servicemembers Civil Relief Act don't allow you to defer payments, California law allows for a six-month deferral if certain conditions are met.

Eligible service may include:

- Active duty with the Army, Navy, Air Force, Marine Corps, or Coast Guard, or
- Active service as a commissioned officer of the National Oceanic and Atmospheric Administration, or
- Active service as a commissioned officer of the Public Health Service, or
- Service with the forces of a nation with which the United States is allied in a war or military action, or
- Service with the National Guard or a state militia under a state call of duty, or
- Any period when you are absent from duty because of sickness, wounds, leave, or other lawful cause.

For more information, please call Chase Military Services at 1-877-469-0110.

CR42052
FC016

# EXHIBIT D

 **Gmail**

Theresa Key

## Welcome to WaMu(R) Online Banking

1 message

| | |
|---|---|
| **Washington Mutual** <DoNotReply@cems.wamu.com><br>Reply-To: DoNotReply@cems.wamu.net<br>To: tkey0640@gmail.com | Thu, Oct 23, 2008 at 2:47 PM |

To ensure that messages from WaMu are delivered to your inbox, please set your personal email filter to accept email from wamu.com.



Email for Ella Simpson

**Hi Ella Simpson,**

Great news: you're now all set to use WaMu's Online Banking service. Our one-stop site lets you do lots of things—from viewing your account statements to paying your bills—simply and quickly. You can access your account online day or night, so bank in your pajamas if you want. Just visit wamu.com and log on to your account.

Online Banking comes with a lot of helpful features. Visit us today to:

- View up to 18 months of **Transaction History**
- Set up **alerts** to monitor your account activity
- Go paperless with **online statements**
- View images of canceled checks, from up to 90 days ago
- View or download statements online, from up to 7 years ago
- Transfer money between eligible accounts
- Send secure messages to WaMu

Not all features are available with every account. To find out what's available to you, just log on to your account at wamu.com.

You can also enroll in our free *Personal Bill Pay®* service. It lets you pay your bills and loans online, and most payments are made within 2 business days. All payments are backed by our **On-Time Guarantee**. And it's FREE when you pay your bills from a WaMu® checking account.

To start paying your bills online, just log on and click on **Pay Bills and Loans**. Or you can learn more about this service.

Thanks again for choosing WaMu!

Sincerely,

WaMu

Deposits at Washington Mutual are FDIC insured

For phone number and email information, please visit the **Contact Us** section of wamu.com.

Privacy & Security: to access the Washington Mutual privacy policy, go to
http://www.wamu.com/customer_service/questions_answers/security_privacy/default.asp

Please note that you are unable to respond directly to this message. If you have any questions about your
account or if you need further assistance, please contact Washington Mutual Customer Service.

Washington Mutual, Inc. and its subsidiaries are not responsible for and do not endorse any information, advice,
opinions and services from third-party news information or service providers.

Deposits are accepted by Washington Mutual Bank and Washington Mutual Bank fsb and are FDIC insured.

© Copyright 1998 - 2008, Washington Mutual, Inc. All Rights Reserved.

 **Gmail**

Theresa Key

## A New Statement is Ready

1 message

**Washing**
Reply-To
To: tkey

Thu, Jan 15, 2009 at 4:21 PM

To ensure that messages from WaMu are delivered to your inbox, please set your personal email filter to accept email from wamu.com.

Washington Mutual, a division of JPMorgan Chase Bank, N.A.

Email for Ella Simpson with account ending in 9437

**Hi Ella Simpson,**

We want to let you know that the statement for the account FREE CHECKING / ******9437 is available for the statement period ending Jan 14 2009 12:00AM.

If you would like to view your statement:

1. Log on to wamu.com
2. Go to the **Statements** page.

Please make sure to review all important notices and attachments and share the statement and any accompanying information with any joint owner of your account.

Thanks again for choosing WaMu!

Sincerely,

WaMu

JPMorgan Chase Bank, N.A. Member FDIC, Equal Opportunity Lender

For phone number and email information, please visit the **Contact Us** section of wamu.com.

Privacy & Security: to access the Washington Mutual privacy policy go to
http://www.wamu.com/customer_service/questions_answers/security_privacy/default.asp

Please note that you are unable to respond directly to this message. If you have any questions about your account or if you need further assistance, please contact Washington Mutual Customer Service.

JPMorgan Chase Bank, N.A. and its affiliates are not responsible for and do not endorse any information, advice, opinions and services from third-party news information or service providers.

JPMorgan Chase Bank, N.A. Member FDIC. Equal Opportunity Lender

Products and services offered by JPMorgan Chase Bank, N.A. and its affiliates

© Copyright 1998 - 2008, Washington Mutual, Inc. All Rights Reserved.

If you have concerns about the authenticity of this message, please visit chase.com/CustomerService for options on how to contact us.

ABOUT THIS MESSAGE
This service email gives you updates and information about your Chase relationship. This email was sent from an unmonitored mailbox. Go to chase.com/CustomerService for options on how to contact us.

Your privacy is important to us. See our online Security Center to learn how to protect your information.

Chase Privacy Operations, P.O. Box 659752, San Antonio, TX 78265-9752.

⌂ EQUAL HOUSING LENDER    ©2017 JPMorgan Chase Bank, N.A.    51343_EM_MSP

Tue, Jul 23, 2019 at 1:56 AM

[Quoted text hidden]

 **Gmail**

Theresa Key

---

## Important information about your WaMu account
1 message

| | |
|---|---|
| **WaMu** | Tue, Sep 15, 2009 at 4:57 PM |
| Reply-To | |
| To: tkey | |

WaMu is becoming Chase

| | | |
|---|---|---|
| Email for ELLA SIMPSON with account ending in 4091 | | Account Alert |

**Your online account access is moving on October 25, 2009!**

Dear ELLA SIMPSON,

Now that WaMu is becoming Chase, your online account access and online services will move to chase.com. Beginning **October 25, 2009**, you can take advantage of the online services Chase customers have enjoyed for years, including account management, online payments and transfers, Chase Mobile℠ and Account Alerts. Learn more about the move.

**Keep these dates in mind:**

**Before October 16:** If you use **Quicken®, QuickBooks® or Microsoft® Money**, you'll have the last three months of data available after your accounts move to chase.com. If you need additional history, please download your information from wamu.com before October 16. **Once on chase.com, you'll have up to seven years of deposit account statement history available to view, save or print.**

**Before October 22: Plan ahead.** Please schedule your online payments and transfers on wamu.com by October 22 so we can process and send them by the dates you indicate. October 23-24, you'll be able to see some of your wamu.com information, however you won't be able to see your home equity loan information or make online payments and transfers.

**On or after October 25: Log on to** chase.com. You'll be able to manage your accounts, see your transaction history, pay bills, set up new Account Alerts, and much, much more.

**Important note about your online agreement:**
Beginning effective October 23, the terms and conditions that govern your online services are presented in the chase.com Online Service Agreement; and online service-related electronic disclosures and communications will be presented in the Online Service E-Sign Disclosure and Consent. **You will also be presented with this agreement and the disclosure when you log on to www.chase.com for the first time on or after October 25.**

**Important note for customers already banking online at chase.com:**
If you're already a Chase customer and you currently bank online at chase.com, you may see your WaMu accounts when you log on **AFTER** October 25. **Please note that your bill payments and external transfers will be on your wamu.com migrated User ID on chase.com.** You'll need to keep using both your wamu.com and chase.com User IDs after the move on October 25 to continue seeing these types of payment details.

**Read more about the move.** Visit **www.chase.com/wamu** anytime for more information, including highlights about significant changes to the online service terms and conditions. (If you're concerned about online security, you may type the URL directly into your browser.)

Sincerely,

WaMu Customer Service

For phone number and email information, please visit the **Contact Us** section of wamu.com.

Quicken and QuickBooks are registered trademarks of Intuit Inc., registered in the United States and other countries.

Microsoft is a registered trademark of Microsoft Corporation in the United States and/or other countries.

Wire Transfer requests must be received by Chase by the Cut-off Time on bank business days for same day transfers of funds.

Case 2:25-ap-01310-WB   Doc 1   Filed 07/14/25   Entered 07/14/25 17:05:42   Desc
Main Document      Page 79 of 90

**M Gmail**

Theresa Key <

---

## Important loan update

2 messages

---

**Chase Home Mortgage** <Chase@                                                    Wed, May 24, 2017 at 10:52 AM
Reply-T
To: tkey

---

Upcoming system update will result in some changes and limitations.



**CHASE O**

View Online
Email Security Information

Changes are coming
to your line of credit
or loan account.

Dear Ella Simpson:

We're updating the system that helps us service your line of credit or loan.

While this transition doesn't affect any terms or conditions of your account, we wanted to share some important information.

### Here's what you need to know:

• Your account number will change, which you will see on your newly redesigned statement or other communications starting in June.

• You'll be able to make payments the same way you do today.

• If you make payments to your account through another company, you will need to update your new account number and payment address that will appear on your payment coupon starting in June.

### Limited account information from May 31 through June 7:

• Your account balances may only reflect activity through May 31.

• We'll process payments as usual, but you might not see them until June 7.

### Other important details to keep in mind:

• Previously, you had tax or insurance payments made on your behalf, which will now be reflected on your monthly statement under "Recoverable Corporate Advance."

We appreciate your business. If you have any questions, please call us at one of the numbers below.

Sincerely,

*Dean Cooper*

Dean Cooper
Managing Director
1-866-316-9656
1-800-582-0542 TTY
www.chase.com

Esta carta contiene información importante de la cuenta. Si tiene alguna pregunta o necesita ayuda para traducirla, por favor llame al 1-866-316-9656.

**Email Security Information**

**Email intended for: Ella Simpson.**

**For your loan or line of credit account ending in: 4091.**

Case 2:25-ap-01310-WB    Doc 1    Filed 07/14/25    Entered 07/14/25 17:05:42    Desc
Main Document      Page 80 of 90

**M Gmail**

Theresa Key

## Same service. Great benefits. Stronger than ever.

1 message

WaMu <wamu@                                                                                    Wed, Jan 14, 2009 at 12:11 PM
Reply-
To: tke

To opt out of receiving similar emails in the future, please see the instructions at the end of this email

WaMu

Email for Ella Simpson

| wamu.com | View My Accounts | Pay Bills | Transfer Funds | Get Email Alerts |

### Same service. Great benefits. Stronger than ever.

Hello, I'm still bringing you everything you love about your bank.

Our name will be changing over the coming months, but the reasons you choose to bank with us won't change:

- Your local branch will remain open
- Free checking will remain free
- You'll still get great service from our friendly bankers

We'll continue to provide you with the great service you've come to expect—now with a whole new level of confidence. Continue to bank with us as you usually do. And stay tuned over the coming months, as you'll begin to see the Chase name in your branch, in your statements, online, and in ads.

WaMu is becoming Chase

| About WaMu | Find a Location | Corporate Profile | In Your Community | Security & Privacy |

Deposit products and services provided by JPMorgan Chase Bank, N.A. Member FDIC

Unsubscribe from WaMu Email Marketing
This email was sent                      If you'd like to unsubscribe, you can visit our opt-out page.

Protect yourself from online fraud
Fraud is a serious issue and we want to make sure your account information remains secure. Never email your personal or account information. We'll never ask you to. Don't download email attachments. We'll never send you any. Keep your password secure and make account transactions only after you have logged in to your account at our secure Web site. Act quickly if you feel you have been a victim of fraud—contact WaMu customer service immediately. For more information, visit our Privacy and Security page.

Questions? Please do not reply to this email. To contact us, choose the option that best suits you. Always remember to keep your password safe and never send your personal or account information via email. Learn more about avoiding email and phishing scams.

Washington Mutual, a division of JPMorgan Chase Bank, N.A. Member FDIC
1201 3rd Ave., Seattle, WA 98101

# M Gmail

Theresa Key

---

## Your deposit statement is available online

1 message

**Chase <Chase                                                                                    Wed, Nov 18, 2009 at 4:25 PM

Note: This is a service message with information related to your Chase account(s). It may include specific details about transactions, products or online services. If you recently cancelled your account, please disregard this message.



Dear Chase Online[SM] Customer:

We're writing to let you know the statement for your deposit account ending in 9437 is now available online.

To see your statement, log on to www.Chase.com.

If you aren't enrolled in Paperless Statements and think you've received this message in error, please call our Customer Support team immediately, using the phone number on the "Contact Us" page on Chase Online.

Please don't reply directly to this automatically-generated e-mail message.

Sincerely,

Online Banking Team

JPMorgan Chase Bank, N.A. Member FDIC
©2009 JPMorgan Chase & Co.

Your personal information is protected by advanced online technology. For more detailed information, view our Online Privacy Policy.
To request in writing: Chase Privacy Operations, 451 Florida Street, Fourth Floor, LA2-9376, Baton Rouge, LA 70801

EMLSTMT

 **Gmail**

Theresa Key <

---

## An important notice about insufficient funds in your Chase account

2 messages

---

**Chase** <Chase@                          | Wed, Dec 23, 2009 at 5:44 PM
Reply-To: Chase.1
To: tkey

Note: This is a service message with information related to your Chase account(s). It may include specific details about transactions, products or online services. If you recently cancelled your account, please disregard this message.

Dear Chase Online[SM] Customer:

We're writing to let you know that there are insufficient funds to complete recent activity for your deposit account ending in 9437.

To see a detailed notice about this situation, please log on to www.Chase.com and go to the Account Activity page or the Account Notices page for this account.

If you aren't enrolled to receive Paperless Statements and Notices or you think you've received this message in error, please call our Customer Support team immediately. To find the appropriate phone number for your account type, go to the Customer Center on Chase Online click the "Contact us" link.

Please don't reply directly to this automatically-generated e-mail message.

Sincerely,

Online Banking Team

JPMorgan Chase Bank, N.A. Member FDIC
©2009 JPMorgan Chase & Co.

Your personal information is protected by advanced online technology. For more detailed information, view our Online Privacy Policy.
To request in writing: Chase Privacy Operations, 451 Florida Street, Fourth Floor, LA2-9376, Baton Rouge, LA 70801

---

**Chase** <Chase@                          | Wed, Dec 23, 2009 at 5:44 PM
Reply-To: Chase
To: tkey

[Quoted text hidden]

 **Gmail**

Theresa Key

## Important information regarding your Chase account

1 message

| Chase | Fri, May 28, 2010 at 11:29 AM |
|---|---|
| Reply- | |
| To: tke | |

E-mail Security Information.

**Note:** This is a service message with information related to your Chase account(s). It may include specific details about transactions, products or online services. If you recently cancelled your account, please disregard this message.

Customer privacy and security have never been more important. We want you to know what we're doing to protect your privacy and keep your information secure. Following is a copy of our Federal Privacy Policy and our California Privacy Notice, which are for all of your Chase accounts.

These documents describe how we ensure the privacy of your information, including what we may share and your right to limit the sharing and use of information that we may have about you. We believe the responsible use of information is an important part of meeting your needs and providing consistent service so we urge you to look carefully at both the Privacy Policy and the California Privacy Notice, and the choices they offer. If you have questions about our Privacy Notification, please call us at the number noted in the following Privacy Notification.

We value you as a customer and hope you will continue to take full advantage of the benefits your accounts provide. If you have questions, about your accounts, please call us at 1-800-935-9935.

Sincerely,

Jennifer Myhre
Senior Vice President
Chase Consumer Banking

**PRIVACY POLICY**

This Policy explains what Chase does to keep information about you private and secure. We want you to know how we manage that information to serve you and that you have choices about how it is shared. This Policy covers our family of companies, a partial list of which is contained at the end of this Policy. Please read this Policy carefully.

**Q. What information do you have about me?**
A. To provide services and to help meet your needs, we collect information about you from various sources:

- We get information from your requests for our products or services. One example is income on loan applications.
- We get information about your transactions with us and with others. For example, we have your account balance information.
- We get information, such as your credit history, from credit bureaus.

**Q. How do you safeguard information about me?**
A. We take a number of steps to protect the privacy of information about you. Here are some examples:

- We keep information under physical, electronic or procedural controls that comply with or exceed governmental standards.
- We authorize our employees, agents and contractors to get information about you only when they need it to do their work for us.

- We require companies working for us to protect information. They agree to use it only to provide the services we ask them to perform for us.

**Q. Is information about me shared within your family of companies?**
A. Yes. We may share information about you within our family as required or permitted by law. This helps us to offer you financial products and services, such as loans, deposits, investments, credit cards and insurance.

**Q. Is information about me shared with service providers and financial companies outside your family of companies?**
A. Yes, as permitted by law. We may share information about you with outside companies that work for us. These may include firms that assist in marketing our products. We may also share information about

you with outside financial companies that have joint marketing agreements with us. These arrangements give you the opportunity to receive additional products or services.

**Q. Is information about me shared with non-financial companies outside your family of companies?**
A. Yes. We may share information about you with companies outside of our family as permitted by law, including retailers, auto dealers, auto makers, direct marketers, membership clubs and publishers.

**Q. Is information about me shared in any other ways?**
A. Yes. We may also share information about you in other ways, as required or permitted by law. Here are some examples of ways that we share information:

- To protect against fraud.

- To respond to a subpoena.

- To service your account.

- To report to a credit bureau.

- With your consent.

**Q. What choices do I have about information sharing and use?**
A. We offer you the following three choices about sharing information that identifies you:

- *Choice #1.* Third party sharing: You may tell us not to share information about you with non-financial companies outside of our family of companies. Even if you do tell us not to share, we may do so as required or permitted by law. Also if you have authorized us to share information in connection with a particular product or service, we will continue to share information about you in connection with that product or service. For example, you might have a credit card with one of our airline, retail or university partners that offers rewards programs.

**and**

- *Choice #2.*

  Affiliate sharing: You may tell us not to share the following information about you within our family of companies:

  - Information from your applications to be used to determine your eligibility, such as your income.

  - Information from consumer credit reports, such as your credit history.

  - Information from sources used to verify information you provide us, such as outstanding loans or employment history.

  Even if you do tell us not to share, we may share other types of information within our family. For example, we may share name and address, information about transactions or balances with us, as well as survey results.

**and**

- *Choice #3.* Affiliate marketing: You may tell us to limit our family of companies, such as our credit card, auto finance and securities affiliates, from marketing their products and services to you if you do not have an account or business relationship with them. These marketing offers are based on your personal information that our affiliate receives from another Chase company; this information includes your income, your account history with us and your credit history with us. Your choice to limit these marketing offers will apply for five years from when you tell us your choice. After five years, you will receive a renewal notice from us that will allow you to continue to limit our affiliate marketing.

**Q. How do I tell you about my privacy choices?**
A. You may contact us by:

- Calling us toll-free at 1-888-868-8618, or

- For hearing impaired assistance, dialing 7-1-1, then 1-888-868-8618 and wait for operator assistance, or

- Writing us at P.O. Box 260177, Baton Rouge, LA 70826-0177, or

- Submitting them online

**You do not need to contact us unless you want to make one of the privacy choices listed above.**

**Q. What about joint accounts?**
A. Each person may separately make privacy choices, and joint account holders may make privacy choices for each other. If only one joint account holder makes a privacy choice, information about the other joint account holder may be shared.

**Q. How do you tell me about your Policy?**
A. We send our Policy to you when you open a new account. We also send it to current customers yearly.

 Gmail

Theresa Key

## Your home loan statement is available online

1 message

| | |
|---|---|
| **Chase** <Chase@ | Thu, Apr 26, 2012 at 6:49 PM |
| Reply-To: Chase. | |
| To: TKE | |

Note: This is a service message with information related to your Chase account(s). It may include specific details about transactions, products or online services. If you recently cancelled your account, please disregard this message.

Dear Customer:

We're writing to let you know the home loan statement for your account ending in 4091 is now available online.

To see your statement, log on to www.Chase.com.

If you aren't enrolled in Paperless Statements and think you've received this message in error, please call our Customer Support team immediately, using the phone number on the "Contact Us" page on Chase Online$^{SM}$.

Please don't reply directly to this automatically-generated e-mail message.

Sincerely,

Online Banking Team

**M Gmail**

## Important information about your Chase Paperless Statements

1 message

Chase <Chase@reply.chase.com>                                                          Fri, Dec 4, 2009 at 10:01 AM
Reply-To: Chase.872115343.68154.0@reply.chase.com
To: TKEY0640@gmail.com

E-mail Security Information.

**Note:** This is a service message with information related to your Chase account(s). It may include specific details about transactions, products or online services. If you recently cancelled your account, please disregard this message.

Dear EST OF ELLA MAEZONIA SIMPSON,

For your Chase account ending in 9437:

**We're writing about action you must take by January 8, 2010, to keep receiving Paperless Statements for your account above.** You enrolled this account in Paperless Statements on WaMu.com. Now that WaMu is part of Chase, you must confirm your paperless enrollment by logging on to Chase.com.

It's easy to continue your Paperless Statements enrollment. Just visit Chase.com and log on to Chase Online$^{SM}$ with your WaMu User Name and Password by **January 8.**

Please note: You can reenroll your account in Paperless Statements anytime. However, if you don't confirm your current enrollment by **January 8**, you'll begin receiving paper statements in the mail for this account.

Important security reminder:

- Please do not reply to this e-mail. Instead, call us or send us a secure message.
- You should never respond to any e-mail or text message that asks you to enter logon information or provide personal or financial details.
- To learn more about how we help protect you from fraud, types of fraud and how to report it, please visit the Chase Security Center.

If you have questions, please call us at 1-877-CHASEPC (1-877-242-7372) or send us a secure e-mail through Chase Online.

We appreciate your business.

The Online Services Team

p.s. Now that WaMu is Chase, you can take advantage of the online services our customers have enjoyed for years, including account management, online payments and transfers, Chase Mobile and Account Alerts. Learn more.

**E-mail Security Information**
**E-mail Intended for: EST OF ELLA MAEZONIA SIMPSON.**
**For your account ending in: 9437.**

If you would like to learn more about e-mail security or want to report suspicious e-mail, click here.

**Note:** If you are concerned about clicking links in this e-mail, the Chase Online services mentioned above can be accessed by typing www.chase.com directly into your browser.

If you want to contact Chase, please do not reply to this message, but instead go to www.chase.com. For faster service, please enroll or log in to your account. Replies to this message will not be read or responded to.

Your personal information is protected by advanced technology. For more detailed security information, view our Online Privacy Policy. To request in writing. Chase Privacy Operations, 451 Florida Street, Fourth Floor, LA2-9376, Baton Rouge, LA 70801.

JPMorgan Chase Bank, N.A. Member FDIC
© 2009 JPMorgan Chase & Co.

LC-CWMPLS-W3

This e-mail was sent to:

# EXHIBIT E

**M** Gmail

LTR TO Attorney

Theresa Key

**accounts**

1/1

**Theresa Key**
To:

Fri, Aug 12, 2011 at 5:25 PM

Hi William

This saga started a few days after I found out my mom was terminally ill. I called the attorney to let her know that I couldn't find the trust documents. I asked her to forward them to Parker Stanburry for review because they needed them to talk to me.

My mom passed 8/15/08. It was a sudden illness.

Mom and I went to the attorney in 2006 to set up her estate and we received financial planning help from Edward Jones, a financial services firm. On of the reps at Edward Jones referred me to this attorney in Long Beach to prepare mom's trust. Since I'm an only child he thought that a trust would be sufficient.

Upon mom's passing I took her death certificate to the banks (Washington Mutual and Wells Fargo). Mom noted me on her Wamu account but forgot to put me on the new Wells Fargo account so I had to wait 45 days to access that account. I paid off her bills and I kept paying on the mortgages. I've been paying on these mortgages for over 20 years. The newest one with chase was recently set up because we did a home improvement on the bath and got a HELOC with Wamu.

About a year after mom passed, Chase purchased Wamu. The accounts that were originally set up were a HELOC but once she passed it became a regular mortgage. When I called Chase to find out why the payments weren't being debited and the payments went from about $548 per month to about $1100 a month, Chase reps said they couldn't speak to me about the acount. I called them weekly and sent the docs I had. I finally hired Amy Jacobs to help with the trust info. She contacted the attorney who originally prepared the trust July of last year and I finally got a copy of the trust. Amy contacted Chase to confirm my identity, but they started a process of blocking my calls and saying they didn't have docs on file or convos with me. I sent them funds towards a forbearance agreement, however, the funds were held in suspense. In the interim they acellerated the loan and noted it was in pre-foreclosure December of 2010.

1/1

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Theresa M. Key<br><br>c/o The Estate of Ella M. Simpson | DEFENDANTS<br>Selene Finance, LP<br>U.S. Bank Trust National Association<br>Robertson, Anschutz, Schneid, Crane<br>13010 Morris Road, Suite 450<br>Alpharetta, GA 30004 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Theresa M. Key, Pro Se<br>915 W. Manchester Blvd<br>Ste 5 #1966<br>Inglewood, California 90301          (818) 539-7245 | ATTORNEYS (If Known)<br>Sarah Arlene Dooley-Lewis<br>Robertson, Anschutz, Schneid & Crane LLP<br>1 Park Plaza Ste 600<br>Ste 600                              310-413-7315<br>Irvine, CA 92614                    sdooleylewis@raslg.com |
| PARTY (Check One Box Only)<br>X Debtor        □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor      □ Other<br>□ Trustee | PARTY (Check One Box Only)<br>□ Debtor        □ U.S. Trustee/Bankruptcy Admin<br>X Creditor      □ Other<br>□ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Plaintiff brings this Adversary Proceeding under 11 U.S.C. §§ 502(b), 506(a), 362(k), and 105(a) to challenge JPMorgan Chase Bank, N.A. misapplication of payments and Selene Finance LP's incorrect reporting of amounts due, which caused the Plaintiff to file a Motion to Dismiss. Plaintiff objects to Defendants' Proof of Claim under § 502(b) due to inaccurate balances and improper fees, seeks a determination of the secured status of the claim under § 506(a), and requests declaratory relief under § 105(a) to clarify payment obligations and prevent enforcement of incorrect amounts. Additionally, Plaintiff seeks injunctive relief under § 105(a) to stay foreclosure or collection actions pending resolution of these claims.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- [X] 11-Recovery of money/property - §542 turnover of property
- [ ] 12-Recovery of money/property - §547 preference
- [ ] 13-Recovery of money/property - §548 fraudulent transfer
- [ ] 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- [X] 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- [ ] 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- [ ] 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- [ ] 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- [ ] 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- [ ] 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- [ ] 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
- [ ] 61-Dischargeability - §523(a)(5), domestic support
- [ ] 68-Dischargeability - §523(a)(6), willful and malicious injury
- [ ] 63-Dischargeability - §523(a)(8), student loan
- [ ] 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- [ ] 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- [X] 71-Injunctive relief – imposition of stay
- [ ] 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
- [X] 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- [X] 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- [ ] 01-Determination of removed claim or cause

**Other**
- [ ] SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- [ ] 02-Other

RECEIVED
JUL 14 2025
CLERK U.S. BANKRUPTCY COURT
DISTRICT OF CALIFORNIA
BY:              Deputy Clerk

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR *THERESA M. KEY* | BANKRUPTCY CASE NO. *2:25-bk-14184-WB* | |
| DISTRICT IN WHICH CASE IS PENDING *CENTRAL DISTRICT* | DIVISION OFFICE *Los Angeles* | NAME OF JUDGE *HON. JULIA BRAND* |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF *THERESA M KEY PRO SE* | DEFENDANT *Selene Finance / US Bank Chase* | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING *CENTRAL DISTRICT* | DIVISION OFFICE | NAME OF JUDGE *HON. Julia Brand* |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE *7/14/25* | PRINT NAME OF ATTORNEY (OR PLAINTIFF) *THERESA KEY* | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.